**AMERICAN FUTURE SYSTEMS, INC. d/b/a Progressive Business Publications, Appellant,**

v.

**BETTER BUSINESS BUREAU OF EASTERN PENNSYLVANIA and Better Business Bureau of Metropolitan Washington, Appellees.**

Superior Court of Pennsylvania.

Argued Oct. 5, 2004.

Filed March 21, 2005.

Reargument Denied May 24, 2005.

Wayne A. Mack, Jr., Philadelphia, for appellant.

Paul D. Weller, Philadelphia, for appellee.

BEFORE: STEVENS, GANTMAN, and KELLY, JJ.

OPINION BY GANTMAN, J.:

¶ 1 Appellant, American Future Systems, Inc., d/b/a Progressive Business Publications ("PBP") asks us to determine whether the trial court's jury instructions and evidentiary rulings constituted error warranting the award of a new trial for defamation against Appellees, the Better Business Bureaus of Eastern Pennsylvania and Metropolitan Washington, D.C. ("BBB"). PBP additionally asks whether the court erred when it denied PBP's motion for judgment as a matter of law ("JNOV"). We hold the court's jury instructions and evidentiary rulings were proper and conclude PBP was not entitled to JNOV. Accordingly, we affirm the judgment entered on the jury's verdict in favor of BBB.

¶ 2 The relevant facts and procedural history of this appeal are as follows. PBP is a publisher and telemarketer of numerous fast-read format newsletters. The newsletters contain business-related information for consumers in career areas such as sales, marketing, advertising, financial management, business management, human resources, and safety and regulatory compliance. PBP sells its newsletters through scripted telemarketing techniques. Telemarketers place calls to consumers at their places of employment during regular business hours, offering them "no-risk" trial subscriptions to newsletters. The consumers may review the first two issues free of charge. In the event consumers do not wish to purchase the newsletters, they need only write "cancel" on the first invoice. If a consumer agrees to try the free "no-risk" trial offer, the telemarketer is instructed to procure the consumer's date of birth (excluding year) for verification purposes.

¶ 3 PBP generally sends the first invoice for payment to the consumer who agreed to the trial offer. If the first invoice is not returned to PBP with "cancel" written upon it and no payment is immediately forthcoming, PBP sends the second invoice to the accounts receivable department of the solicited consumer's place of employment. Invoices are sent monthly. The invoices request payment, do not state the cancellation policy, and do not contain PBP's phone number. PBP's policy is to terminate, without further obligation, any subscription for which a cancelled invoice is received within six months after the initial phone call. After six months of nonpayment, however, past-due accounts are turned over to a collection agency. A typical annual subscription price is approximately $300.00. Ninety-two percent of the subscriptions are cancelled.

¶ 4 PBP employs approximately 500 telemarketers within 15 separate offices across several states. It telemarkets nationally and solicits 15,000 new subscriptions each week. PBP is headquartered in Malvern, PA, and is owned by Ed Satell, who has a 98% interest in the company. He testified that the company's annual gross revenues have risen every year and totaled $29 million in 2002.

¶ 5 In early 2001, Mr. Satell became aware BBB had published an unsatisfactory reliability report regarding PBP.[1] The reliability report stated, in pertinent part:

---

1. The Council of Better Business Bureaus is comprised of hundreds of separate non-profit corporations nationwide that publish ratings

While this company responds to customer complaints presented to it by this Bureau, this company has an unsatisfactory business performance record due to a pattern of customer complaints alleging billing for unordered merchandise. Some consumers have claimed that they cancelled subscriptions but their cancellations were not honored.

(BBB Reliability Report, March 2001, at 1). The second page of the report contained the following disclaimer:

As a matter of policy, the Better Business Bureau does not endorse any product, service, or company. BBB reports generally cover a three-year reporting period, and are provided solely to assist you in exercising your own best judgment. Information contained in this report is believed to be reliable but not guaranteed as to accuracy. Reports are subject to change at any time.

(*Id.* at 2). Mr. Satell contested the report in correspondence sent to BBB, stating PBP tape-records its telemarketer's calls for training purposes and can disprove claims of unordered merchandise by confirming the birthdate of every consumer who has placed an order. Mr. Satell further stated the number of complaints BBB receives regarding PBP are infinitesimal when compared to the overall volume of PBP's orders. Mr. Satell sought a retraction of the unsatisfactory reliability report.

¶ 6 Thereafter, BBB issued the following updated reliability report regarding PBP:

While this company responds to customer complaints presented to it by this Bureau, this company has an unsatisfactory business performance record due to a pattern of customer complaints alleging billing for unordered merchandise. Some consumers have claimed that they cancelled subscriptions but their cancellations were not honored. On March 16, 2001, [PBP] responded to the BBB concerning the company's unsatisfactory business performance report. The company sells its publications through telemarketing solicitations. It claims that it tape records telephone solicitations for quality control purposes. The company states that it obtains the ordering person's birthdate to verify the order at a later date. According to the correspondence, orders are confirmed by fax within 24 hours, giving the orderer an opportunity to respond. The company claims it has a liberal cancellation policy permitting the customer to cancel anytime within the first three months of the telephone order and receiving a refund on all unsent issues. New subscribers receive two free issues with the right to cancel according to the company. The company claims that its BBB complaint volume is negligible compared to its volume of business.

(BBB Reliability Report, April 2001, at 1). The updated report included the identical disclaimer contained in the earlier report.

¶ 7 Mr. Satell was dissatisfied with the content of the updated report. During the summer of 2001, at Mr. Satell's urging, representatives of BBB met with him and several of his senior employees at the Malvern headquarters of PBP in an effort to resolve the unsatisfactory rating. When no resolution was reached, PBP filed a defamation action against BBB of Eastern PA, which included a claim for punitive damages. The complaint additionally alleged commercial disparagement and tortious interference with existing and pro-

of companies and help resolve consumer complaints. Prior to 2000, the Better Business Bureau Council affiliate serving the local area was BBB of Eastern PA. In October 2000, BBB of Metropolitan Washington, D.C., acquired and took over the operation of BBB of Eastern PA.

spective business relations at Counts II and III, respectively.

¶ 8 BBB filed an answer with new matter. In July 2002, the court permitted PBP to file an amended complaint, joining BBB of Metropolitan Washington, D.C., as successor in interest to BBB of Eastern PA. BBB filed preliminary objections to the amended complaint. In December 2002, the court sustained BBB's preliminary objections and dismissed Counts II and III of the amended complaint.

¶ 9 On June 2, 2003, BBB filed a motion for summary judgment on the remaining defamation claim. On July 2, 2003, PBP filed a cross-motion for summary judgment, contending BBB admitted all averments in PBP's amended complaint, due to BBB's failure to answer the amended complaint. On July 11, 2003, BBB filed an answer with new matter to the amended complaint. BBB's answer with new matter to the remaining defamation claim in the amended complaint was identical to its previous answer with new matter to the same defamation claim. The court denied the competing motions for summary judgment. It denied BBB's motion for summary judgment, because a jury question existed regarding whether the reliability reports were capable of defamatory meaning. It denied PBP's cross-motion for summary judgment as moot, in light of BBB's July 11th answer with new matter to the amended complaint.

¶ 10 Pretrial, the court granted BBB's motion in *limine* to exclude evidence relating to the failing financial status of BBB of Eastern PA and the investigation into its operations conducted by the Council of Better Business Bureaus. The court also granted BBB's motion in *limine* to exclude certain documentary evidence relating to its ratings for other companies. Additionally, the court granted PBP's motion in *limine* to exclude evidence of consumer complaints filed prior to 1998 and evidence relating to a 1995 civil action brought by the U.S. Postal Service against PBP.

¶ 11 Trial of the matter took place in October 2003, and lasted seven days. PBP's chief witness was Mr. Satell. He testified, *inter alia,* it was impossible for a pattern of legitimate complaints for unordered merchandise to exist, because PBP's quality control measures assure that every order is authenticated. He further stated the number of BBB complaints represented less than one per cent of PBP's total orders. He averred BBB failed to retract its unsatisfactory reliability report despite his allegedly conclusive demonstration to BBB's representatives that the complaints of unordered merchandise were impossible and blatantly false. He asserted BBB published the allegedly defamatory reliability reports in an effort to pressure PBP to become a dues-paying BBB member.

¶ 12 During Mr. Satell's direct testimony, counsel for PBP identified and utilized correspondence Mr. Satell sent to BBB, claiming "there has never been an unfavorable outcome for us in any judicial forum." (N.T. Trial, 10/8/03, at 50). On cross-examination, over PBP's objection, the court permitted counsel for BBB to inquire regarding the outcome of separate civil actions instituted by the United States Department of Justice and the state of North Carolina against PBP. Additionally, the court permitted BBB to introduce documentary evidence of 108 complaints it had received for unordered merchandise. The court also permitted BBB to present the testimony of three witnesses to rebut Mr. Satell's claim that it was impossible for consumers to receive unordered merchandise.

¶ 13 The court instructed the jury that BBB enjoyed a conditional privilege, because its publications represented matters of public concern. The court additionally instructed the jury that to overcome the

conditional privilege, PBP was required to show that the statements were made with intentional knowledge of their falsity or reckless disregard with respect to their truth or falsity. PBP requested the court to instruct the jury that BBB bore the burden of proof to show its statements were true. The court denied the request and instructed the jury PBP bore the burden of proof to show the statements were defamatory. The jury determined the reliability reports were not defamatory.

¶ 14 PBP filed post-trial motions for JNOV and for a new trial. The motion for JNOV contained a paragraph alleging PBP was entitled to judgment due to BBB's failure to timely answer the amended complaint. However, the allegation was not included in PBP's supporting brief or argued before the court. Following argument, the court denied PBP's motions. The trial court entered judgment on the verdict on March 16, 2004. PBP filed a timely notice of appeal.

¶ 15 On appeal, PBP raises the following issues:

WHETHER [PBP] IS ENTITLED TO A NEW TRIAL WHERE THE [TRIAL] COURT IGNORED SUBSTANTIAL PRECEDENT IN ERRONEOUSLY INSTRUCTING THE JURY:

THAT [PBP] WAS REQUIRED TO ESTABLISH THAT [BBB] ACTED WITH ACTUAL MALICE, RATHER THAN WITH NEGLIGENCE, TO DEFEAT THE CONDITIONAL PRIVILEGE;

THAT [BBB WAS] ENTITLED TO A CONDITIONAL PRIVILEGE EVEN THOUGH THEY CONCEDED THAT THEY CONDUCTED NO INVESTIGATION INTO THE TRUTH OF THE STATEMENTS THEY PUBLISHED CONCERNING [PBP]; AND

THAT [PBP] BORE THE BURDEN OF PROVING THAT [BBB'S] STATEMENTS WERE FALSE?

WHETHER [PBP] IS ENTITLED TO A NEW TRIAL WHERE THE [TRIAL] COURT MADE A NUMBER OF HIGHLY PREJUDICIAL AND IMPROPER EVIDENTIARY RULINGS BY:

ADMITTING IRRELEVANT EVIDENCE REGARDING A TWENTY YEAR OLD COURT OPINION IN A RACIAL DISCRIMINATION CASE AND A TEN YEAR OLD SETTLEMENT IN AN ACTION BROUGHT BY A STATE ATTORNEY GENERAL FOR IMPEACHMENT PURPOSES;

ADMITTING EVIDENCE OF HUNDREDS OF HEARSAY CUSTOMER COMPLAINTS;

IMPROPERLY PRECLUDING [PBP] FROM INTRODUCING EVIDENCE REGARDING [BBB'S] MALICE; AND

PERMITTING [BBB] TO CALL THREE SURPRISE WITNESSES AT TRIAL WHO WERE NOT IDENTIFIED IN DISCOVERY?

WHETHER [PBP] IS ENTITLED TO ENTRY OF JUDGMENT IN ITS FAVOR WHERE [BBB] INEXCUSABLY FAILED TO ANSWER THE COMPLAINT UNTIL AFTER THE CLOSE OF DISCOVERY?

(PBP's Brief at 3).

¶ 16 PBP first claims the court erred in charging the jury as follows:

Now I have determined as a matter of law that the defendants were privileged to publish these...communications. However, a person who is privileged to publish...communications may not abuse this privilege. It is for you, the jury, to determine whether the defen-

dants abused this privilege. And if you find that it did, you may return a verdict in favor of the plaintiff and against one or both defendants.

The privilege I find applicable to this case is the conditional privilege available to consumer reporting agencies to issue fair and accurate reports of consumer complaints.

Now, this privilege is abused, however, if the defendant published the false and defamatory communication intentionally, that is, with knowledge of its falsity or recklessly, that is, with disregard as to whether it was true or false.

(N.T., 10/14/03, at 17).

¶ 17 PBP argues the court erred in giving the above instruction in light of the court's determination, as a matter of law, that PBP was a "private figure" plaintiff. (PBP's Brief at 20). PBP asserts it was not required, under decisional precedent, to prove the statements were made "maliciously." (*Id.*) Instead, PBP contends the law merely required it to show the statements were made "negligently." (*Id.*) Moreover, PBP insists the statements did not involve matters of public concern. Therefore, the court erred in instructing the jury that PBP bore the burden of proof to show the statements were false. Instead, the court should have instructed the jury BBB bore the burden of proof to show the statements were true. Thus, PBP concludes the court erred in denying its motion for a new trial based on the court's erroneous jury instructions. We disagree.

■■■ ¶ 18 Our review of PBP's first issue implicates the following legal principles:

This [C]ourt will not reverse a trial court's decision regarding the grant or refusal of a new trial absent an abuse of discretion or an error of law. Where an appellant claims that the trial court erred in denying a new trial due to an allegedly objectionable jury charge, a timely and specific objection must be made to preserve [this] claim[.]

* * *

In reviewing a claim regarding error with respect to a specific jury charge, we must view the charge in its entirety taking into consideration all the evidence of record and determine whether or not error was committed and, if so, whether that error was prejudicial to the complaining party.

*Carpinet v. Mitchell*, 853 A.2d 366, 371 (Pa.Super.2004) (quotation marks and internal citations omitted). "A trial court has broad discretion in phrasing jury instructions, and may choose its own wording as long as the law is clearly, adequately and accurately presented to the jury for its consideration." *Vallone v. Creech*, 820 A.2d 760, 764 (Pa.Super.2003), *appeal denied*, 574 Pa. 755, 830 A.2d 976 (2003).

■■■ ¶ 19 A publisher of a defamatory statement is not liable if the statement was made subject to a conditional privilege and the privilege was not abused. *Elia v. Erie Ins. Exchange*, 430 Pa.Super. 384, 634 A.2d 657, 660 (1993), *appeal denied*, 537 Pa. 662, 644 A.2d 1200 (1994). A conditional privilege arises when a recognized interest of the public is involved. *Id.* In *Banas v. Matthews Intern. Corp.*, 348 Pa.Super. 464, 502 A.2d 637 (1985), this Court stated:

Appellant argues that its conditional privilege could be abused and therefore lost, only by a defamatory communication made with malice—not simply negligently, as the trial court charged the jury. This argument may be disposed of summarily.

In *Rutt v. Bethlehems' Globe Publishing Co.*, 335 Pa.Super. 163, 484 A.2d 72 (1984), we stated:

*Matus [v. Triangle Publications, Inc.,* 445 Pa. 384, 286 A.2d 357 (1971), *cert. denied,* 408 U.S. 930, 92 S.Ct. 2494, 33 L.Ed.2d 343 (1972)], . . . declare[s] quite unequivocally, that under Pennsylvania law, once the issue of conditional privilege is raised by a defendant who has been sued by a private figure for defamatory communications concerning matters which are not of public concern, the burden of proof of the plaintiff in order to establish abuse of the conditional privilege is "want of reasonable care and diligence to ascertain the truth" or more simply put, negligence. *Id.* 445 Pa. at 398, 286 A.2d at 365[.]

*Id.* at 638–39. The defamatory speech in *Banas* did not involve a matter of public concern. *Id.*

¶ 20 Speech on matters of public concern "is at the heart of the First Amendment's protection." *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* 472 U.S. 749, 759, 105 S.Ct. 2939, 2945, 86 L.Ed.2d 593, 602 (1984). Whether speech addresses a matter of public concern must be determined by its content, form, and context, as evidenced by the entire record. *Id.* at 761, 105 S.Ct. at 2946, 86 L.Ed.2d at 603. A statement regarding the effectiveness of a consumer product addresses a matter of public concern. *Unelko Corp. v. Rooney,* 912 F.2d 1049, 1056 (9th Cir. 1990), *cert. denied,* 499 U.S. 961, 111 S.Ct. 1586, 113 L.Ed.2d 650 (1991).

¶ 21 A private figure plaintiff who seeks punitive damages in a defamation suit against a media defendant regarding statements touching upon a matter of public concern, must 1) show the defendant acted with actual malice and 2) prove the allegedly defamatory statements were, in fact, false. *Philadelphia Newspapers Inc. v. Hepps,* 475 U.S. 767, 774–78, 106 S.Ct. 1558, 1562–65, 89 L.Ed.2d 783, 791–93 (1986) (citing *Gertz v. Robert Welch,*

*Inc.* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974)). A statement is made with "actual malice," if it is made "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan,* 376 U.S. 254, 279–80, 84 S.Ct. 710, 725–26, 11 L.Ed.2d 686, 706 (1964).

¶ 22 Instantly, the statements at issue related to consumer complaints and, therefore, touched upon a matter of public concern. *See Unelko, supra.* Thus, BBB was entitled to a conditional privilege in its publication of the reports. *See Elia, supra.* Further, PBP was required to show more than mere negligence in the publication of the statements to defeat the conditional privilege enjoyed by BBB. *See Banas, supra; Rutt, supra.* PBP, which sought punitive damages, was required to show the statements were made with actual malice. *See Gertz, supra; Sullivan, supra.* Additionally, PBP was required to show the complaints of unordered merchandise were false. *See Philadelphia Newspapers, Inc., supra.* Therefore, the court's charge adequately and accurately explained the law to the jury and we see no error or abuse of discretion. *See Vallone, supra; Carpinet, supra.* Accordingly we dismiss PBP's first issue.

¶ 23 In its second issue, PBP challenges a number of allegedly erroneous evidentiary rulings. Specifically, PBP claims counsel for BBB was erroneously permitted to cross-examine Mr. Satell regarding allegedly irrelevant and prejudicial evidence of two civil suits filed against PBP's corporate alter-ego, American Future Systems, Inc. PBP further claims the documents detailing specific customer complaints to BBB were inadmissible hearsay. Additionally, PBP posits it should have been allowed to admit documents relating to the Council of Better Business Bureaus' investigation into the allegedly inappropriate

operation of BBB of Eastern PA, including documents relating to BBB's handling of complaints against other companies. Finally, PBP asserts the testimony of BBB's three rebuttal witnesses, constituted unfair surprise. Thus, PBP concludes the court erred in denying its motion for new trial on these grounds. We disagree.

■ ¶ 24 "Absent a clear abuse of discretion by the trial court, appellate courts must not interfere with the trial court's authority to grant or deny a new trial." *Harman ex rel. Harman v. Borah,* 562 Pa. 455, 466, 756 A.2d 1116, 1121–22 (2000).

In *Harman,* the Court...set forth an additional dual-pronged analysis for our appellate review of a trial court's determination to grant or deny [2] a new trial. First, the appellate court must examine the decision of the trial court to determine whether it agrees that a mistake was, or was not made. If the appellate court discerns that a mistake was made at trial, it must analyze whether the trial court abused its discretion in ruling on the motion for a new trial.

[2] The court specifically held that a review of a denial of a new trial requires the same analysis as a review of a grant.

Our Supreme Court held in *Harman* that in applying the appropriate standard of appellate review of an order denying a new trial [ ], if the alleged mistake at trial involved a discretionary act, the appellate court must review for an abuse of discretion. The Court reiterated that a trial court abuses its discretion by rendering a judgment that is manifestly unreasonable, arbitrary or capricious, or has failed to apply the law, or was motivated by partiality, prejudice, bias or ill will. If the alleged mistake involved an error of law, the appellate court must scrutinize for legal error. If the appellate court agrees with the trial court's determination that there

were no prejudicial mistakes at trial, then a decision by the trial court to deny a new trial must stand and we need not reach the second prong of the analysis.

Furthermore, it is axiomatic that we must consider, viewing the evidence in the light most favorable to the verdict winner, whether a new trial would produce a different verdict. Moreover, we consistently have held that if there is any support in the record for the trial court's decision to deny a new trial, that decision must be affirmed.

*Bey v. Sacks,* 789 A.2d 232, 236–37 (Pa.Super.2001) (internal citations omitted).

■ ¶ 25 Admission of evidence is within the sound discretion of the trial court and we review the trial court's determinations regarding the admissibility of evidence for an abuse of discretion. *Smalls v. Pittsburgh–Corning Corp.,* 843 A.2d 410, 413 (Pa.Super.2004), *appeal denied,* 579 Pa. 704, 857 A.2d 680 (2004). To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party. *Ettinger v. Triangle–Pacific Corp.,* 799 A.2d 95, 110 (Pa.Super.2002), *appeal denied,* 572 Pa. 742, 815 A.2d 1042 (2003). For evidence to be admissible, it must be competent and relevant. *Ratti v. Wheeling Pittsburgh Steel Corp.,* 758 A.2d 695, 707 (Pa.Super.2000), *appeal denied,* 567 Pa. 715, 785 A.2d 90 (2001). Evidence is competent if it is material to the issue to be determined at trial. *Id.* Evidence is relevant if it tends to prove or disprove a material fact. *Id.* at 707–08. Relevant evidence is admissible if its probative value outweighs its prejudicial impact. *Id.* at 708. The trial court's rulings regarding the relevancy of evidence will not be overturned absent an abuse of discretion. *Romeo v. Manuel,* 703 A.2d 530, 532 (Pa.Super.1997).

¶ 26 The character of a witness for truthfulness may not be attacked or supported by cross-examination or extrinsic evidence concerning specific instances of a witness' conduct. Pa.R.E. 608. However, the credibility of a witness may be impeached by any evidence relevant to that issue. Pa.R.E. 607.

 ¶ 27 Hearsay is a statement, other than a statement made by the declarant while testifying under oath, which is offered for the truth of the matter asserted. Pa.R.E. 801(c). Generally, hearsay is inadmissible at trial. Pa.R.E. 802. However, where an out-of-court statement is not admitted for the purpose of proving the truth of what was said, the hearsay rule does not bar admission of that statement. *See, e.g., Spotts v. Reidell,* 345 Pa.Super. 37, 497 A.2d 630 (1985); *Bachman v. Artinger,* 285 Pa.Super. 57, 426 A.2d 702 (1981). "Testimony as to an out of court statement, written or oral, is not hearsay if offered to prove, not that the content of the statement was true, but that the statement was made." *Id.* at 705. "The hearsay rule does not apply to all statements made to or overheard by a witness, but only those statements which are offered as proof of the truth of what is said. Thus, a witness may testify to a statement made to him when one of the issues involved is whether or not the statement was, in fact, made." *Commonwealth v. Wright,* 455 Pa. 480, 485, 317 A.2d 271, 273 (1974).

 ¶ 28 Pennsylvania Rule of Civil Procedure 4019(i) provides:

**Rule 4019. Sanctions**

\* \* \*

(i) A witness whose identity has not been revealed as provided in this chapter shall not be permitted to testify on behalf of the defaulting party at the trial of the action. However, if the failure to disclose the identity of the witness is the result of extenuating circumstances beyond the control of the defaulting party, the court may grant a continuance or other appropriate relief.

Pa.R.C.P. 4019(i). "The purpose of the discovery rules is to prevent surprise and unfairness and to allow a trial on the merits." *Clark v. Hoerner,* 362 Pa.Super. 588, 525 A.2d 377, 382 (1987). "The rules must be interpreted to prevent surprise and unfairness and not as devices for excluding relevant rebuttal evidence." *Id.* "Where there is ambiguity, the rule will be construed...to secure a just determination of the action. This will more likely be achieved by receiving relevant evidence than by excluding it." *Id.*

> Generally the admission of rebuttal evidence is a matter within the sound discretion of the trial court. Rebuttal evidence is proper where it is offered to discredit testimony of an opponent's witness. Our Supreme Court has previously opined "where the evidence goes to the impeachment of his opponent's witness, it is admissible as a matter of right." Furthermore, in order to constitute proper impeachment evidence, the rebuttal witness' version of the facts must differ from that of the witness being impeached.

*Ratti, supra* at 708–09 (internal citations omitted).

 ¶ 29 Instantly, Mr. Satell sent correspondence to BBB containing the averment: "There has never been an unfavorable outcome for us in any judicial forum." (N.T. Trial, 10/8/03, at 50). The correspondence was marked for identification and portions of it were projected upon a screen for the jury's review. On cross-examination, BBB attempted to impeach the credibility of the averment by inquiring into the outcome of two civil suits. Mr. Satell responded he was "very proud of the outcome" in the action initiated by

the United States Department of Justice. (*Id.* at 112). With respect to the outcome in the action initiated by the state of North Carolina, Mr. Satell explained, "they had language in there, in the settlement, that was very, very complimentary to us." (N.T., 10/09/03, at 26).

¶ 30 The impeachment evidence introduced was relevant, because it concerned Mr. Satell's credibility. *See* Pa.R.E. 607, *supra; Ratti, supra.* The probative value of the evidence was not outweighed by its prejudicial impact, because Mr. Satell was given the opportunity to explain his favorable opinion of the resolutions reached. *See id.* Thus, we see no reversible error in the court's decision to permit this avenue of impeachment of Mr. Satell on cross-examination. *See Ettinger, supra; Ratti, supra;* Pa.R.E. 607, *supra.*

¶ 31 Additionally, BBB introduced documentary evidence of 108 consumer complaints it had received, alleging billing for unordered merchandise. PBP lodged an objection on the basis of hearsay. BBB responded it was not offering the documents for the truth of the matter asserted; *i.e.,* that PBP billed for unordered merchandise. Instead, BBB offered the evidence to show in fact it had received complaints alleging same. The court gave the jury a limiting instruction regarding its consideration of the reports. Under these circumstances, the court did not err in admitting the evidence. *See Spotts, supra; Wright, supra.*

¶ 32 Further, the court granted BBB's motion *in limine* to preclude introduction of documents relating to the Council of Better Business Bureaus' investigation into the allegedly inappropriate operation of BBB of Eastern PA, including documents relating to BBB's handling of complaints against other companies. Chronologically, the BBB of Metropolitan Washington, D.C., acquired the BBB of Eastern PA, in October 2000. The relia-

bility reports published in March and April of 2001, which PBP alleged were defamatory, were issued by BBB of Metropolitan Washington, D.C., at a time when BBB of Eastern PA was defunct. Thus, we fail to see the relevance of the proposed evidence to the issues raised at trial and determine the court properly precluded the proposed evidence. *See Smalls, supra; Ettinger, supra; Ratti, supra.*

¶ 33 Lastly, a major thrust of Mr. Satell's testimony was the impossibility that PBP billed for unordered merchandise, due to its strict quality control procedures. In response, BBB presented the testimony of three rebuttal witnesses whose names had not been previously provided in discovery. The witnesses were identified on "the eve of trial." (PBP's Brief at 40). The witnesses testified that they had received unordered merchandise. Given the competing interests of preventing unfair surprise and permitting relevant rebuttal evidence, we see no reversible error. *See Ratti, supra; Clark, supra.* Instead, the court properly balanced these interests to achieve a just determination of the action. *See id.* Based on the foregoing, we reject PBP's assertion of entitlement to a new trial due to allegedly erroneous and prejudicial evidentiary rulings. *See Smalls, supra; Ettinger, supra.*

¶ 34 In its final issue, PBP alleges BBB's failure to answer the amended complaint constituted an admission of the averments contained therein, warranting the grant of summary judgment in PBP's favor. PBP asserts the court erred in denying its cross-motion for summary judgment and concludes, on that basis, the court erred in dismissing its motion for JNOV as well. We disagree.

¶ 35 Our standard of review of a trial court's denial of a motion for JNOV is as follows:

A JNOV can be entered upon two bases: (1) where the movant is entitled to judgment as a matter of law; and/or, (2) the evidence was such that no two reasonable minds could disagree that the verdict should have been rendered for the movant. When reviewing a trial court's denial of a motion for JNOV, we must consider all of the evidence admitted to decide if there was sufficient competent evidence to sustain the verdict. In so doing, we must also view this evidence in the light most favorable to the verdict winner, giving the victorious party the benefit of every reasonable inference arising from the evidence and rejecting all unfavorable testimony and inference. Concerning any questions of law, our scope of review is plenary. Concerning questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the finder of fact. If any basis exists upon which the jury could have properly made its award, then we must affirm the trial court's denial of the motion for JNOV. A JNOV should be entered only in a clear case.

*Buckley v. Exodus Transit & Storage Corp.*, 744 A.2d 298, 305 (Pa.Super.1999) (internal citations omitted).

■ ¶ 36 Our resolution of the substantive issue underlying PBP's claim of entitlement to JNOV requires review of precedent interpreting Pa.R.C.P. 1026:

Although Rule 1026(a) of the Pennsylvania Rules of Civil Procedure states that all pleadings subsequent to the complaint must be filed within 20 days after service of the preceding pleading, this Rule has been interpreted as permissive rather than mandatory. It is left to the sound discretion of the trial court to permit a late filing of a pleading where the opposing party will not be prejudiced and justice so requires.

*Gale v. Mercy Catholic Medical Center Eastwick, Inc., Fitzgerald Mercy Div.*, 698 A.2d 647, 649 (Pa.Super.1997), *appeal denied*, 552 Pa. 696, 716 A.2d 1249 (1998). When a party moves to strike an untimely pleading, the responding party must demonstrate just cause for the delay. *Id.* (citing *Peters Creek Sanitary Authority v. Welch*, 545 Pa. 309, 681 A.2d 167 (1996)). Thereafter, the moving party is required to show prejudice by virtue of the late pleading. *Gale, supra* at 650.

■ ¶ 37 Nevertheless, only those issues raised in a post-trial motion which are briefed or argued before the court hearing the motion will be considered preserved for appellate review. *Commonwealth v. Manigault*, 501 Pa. 506, 509, 462 A.2d 239, 241 (1983) (citing *Commonwealth v. Williams*, 476 Pa. 557, 383 A.2d 503 (1978)). *See Schneider v. Albert Einstein Medical Center*, 257 Pa.Super. 348, 390 A.2d 1271 (1978) (stating issue waived when raised in post-trial motions but not briefed or argued before trial court). *See also Berman v. Radnor Rolls*, 374 Pa.Super. 118, 542 A.2d 525, 529 (1988) (same).

■ ¶ 38 Instantly, PBP's post-trial motion for JNOV contained one paragraph which alleged the court erred in failing to grant summary judgment in PBP's favor, on the basis that BBB had not filed an answer to PBP's amended complaint. However, PBP did not brief or argue the issue before the trial court. In its Rule 1925(a) opinion, the court noted that it was considering the issue for the first time. The court concluded PBP was not prejudiced by the late filing, where BBB's answer with new matter to the amended complaint was identical to and simply reiterated BBB's previous answer with new matter to the same defamation claim. The record supports the court's conclusion in this regard. *See Gale, supra.* Thus, we

see no abuse of discretion and dismiss PBP's final issue. *See Buckley, supra.*

¶ 39 Based on the foregoing, we hold the court's jury instructions and evidentiary rulings were proper and conclude PBP was not entitled to JNOV. Accordingly, we affirm the judgment entered on the jury's verdict in favor of BBB.

¶ 40 Judgment affirmed.