J-A22005-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| RICHARD KELLER, ET AL, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| RALPH MILLER, ET AL, | |
| Appellee | No. 2057 MDA 2014 |

Appeal from the Order Entered November 5, 2014
In the Court of Common Pleas of Lebanon County
Civil Division at No(s): 2009-02124

BEFORE:  BOWES, JENKINS, AND PLATT,* JJ.

MEMORANDUM BY BOWES, J.:                    **FILED DECEMBER 01, 2015**

Richard, Randy, and Edwin Keller ("the Kellers"), the sons of the decedent, Mary Keller, commenced this action against their cousin Deborah Miller and her husband Ralph ("the Millers"), seeking to recover the proceeds of the sale of their mother's former home on Kathleen Street.  They maintained that their mother told them on a number of occasions that, although she transferred the house to Deborah, she instructed Deborah that, if the house was sold, the proceeds were to be divided equally among the Kellers.  The Kellers alleged that Deborah sold the home, converted the sales proceeds, and fraudulently transferred them to herself and her husband.  They sought an accounting and a constructive trust of the proceeds from the sale.  The trial court entered summary judgment in favor of Deborah, after

_____
* Retired Senior Judge assigned to the Superior Court.

concluding that the testimony upon which the Kellers based their claim to the proceeds of the house was inadmissible hearsay and barred by the statute of frauds. We affirm.

The record reveals that Deborah was Mary's attorney-in-fact pursuant to a power of attorney executed in 1990. She was also the designated executrix under Mary's 1997 will. During the 1990s, Mary Keller and her husband, John, owned the Kathleen Street property. John died in 2001 and Mary subsequently conveyed the property to Deborah on October 28, 2003. Two months later, Mary executed a codicil to her 1997 will in which she devised the Kathleen Street property to Deborah and noted therein that the real estate was already deeded to her. She bequeathed the remainder of her estate to her three sons in equal shares.

On September 11, 2007, Deborah sold the Kathleen Street property for $121,500. The proceeds were placed in a joint account with her husband. Mary died on June 9, 2009. The Kellers filed the within complaint on November 11, 2009, in which they sought to recover the proceeds of the sale of their mother's former home, based on certain statements Mary allegedly made to them. They averred that Mary told them that she instructed Deborah to divide the proceeds from any sale of the Kathleen Street property among them.

The court granted the Kellers' demand for an accounting pursuant to 35 Pa.C.S. § 3501.1, which was based on allegations that Deborah had

misused Mary's funds while acting as her attorney-in-fact for the two and one-half years prior to Mary's death. However, the Kellers abandoned their claims that Deborah had misappropriated Mary's funds prior to trial.

On October 14, 2014, the date of the pre-trial conference, the Millers filed a motion for summary judgment in which they alleged *inter alia*,[1] that the Kellers could not introduce the statements allegedly made by Mary due to the Dead Man's Act, the statute of frauds, the rules against hearsay, and the parol evidence rule. Without such evidence, they could not recover. The Kellers responded with a motion *in limine* seeking an evidentiary ruling on the admissibility of Mary's out-of-court statement that she instructed Deborah to divide the proceeds from the sale of the Kathleen Street property among the Kellers.

The trial court concluded that the Dead Man's Act and the parol evidence rule did not operate to preclude admission of Mary's purported statements, but that the statements were inadmissible hearsay and precluded by the statute of frauds. The court concluded that, absent such

---

[1] Deborah also alleged that the accounting had revealed no irregularities in her expenditures and that the misappropriation issue had been abandoned. In addition, the Kellers' allegations that Mary's transfer of the house was due to Deborah's undue influence required expert medical testimony establishing Mary's diminished capacity. The Kellers acknowledged that they did not intend to introduce such testimony. Deborah maintained that the Kellers could not prove any theory of recovery at trial.

evidence, the Kellers could not prevail and summary judgment was granted.

This appeal followed.  The Kellers present two issues for our review:

1. Was the trial court correct in ruling that the statements of a now-deceased mother to her three sons (Appellants here), telling those sons that the mother conveyed a specific parcel of real estate to her niece (one of the Appellees here) with the expressed instruction that the niece give to the sons the proceeds of sale when the niece sold the property were inadmissible hearsay because they would have been offered to show that the mother actually made the instruction to the niece (the ultimate issue in the case), or alternatively, would have been admissible as an exception to the hearsay rule in that the statements showed the now-deceased mother's then-existing state of mind?

2. Was the trial court correct in ruling that the same evidence described in the previous Question Presented was barred by the Statute of Frauds when the statements did not and do not purport to create an interest in real estate for any of the Appellants, but instead imposed requirements on Appellee Deborah Miller with respect to funds, such requirements by definition only applying  if and when Appellee would (and did) surrender her own interest in a certain parcel of real estate?

Appellants' brief at 3.

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law. Pa.R.C.P. 1035.2.  Where, as here, the non-moving party bears the burden of proof, "he may not merely rely on his pleadings or answers in order to survive summary judgment." ***Murphy v. Duquesne Univ. of the Holy Ghost***, 777 A.2d 418, 429 (Pa. 2001).  Unless a non-moving party "adduce[s] sufficient evidence on an issue essential to its case and on which

it bears the burden of proof," the moving party is entitled to judgment as a matter of law. *Young v. PennDOT*, 744 A.2d 1276, 1277 (Pa. 2000).

In reviewing the trial court's grant of summary judgment, we may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. *Capek v. Devito*, 767 A.2d 1047, 1048, n.1 (Pa. 2001). As with all questions of law, our review is plenary. *Phillips v. A-Best Products Co.*, 665 A.2d 1167, 1170 (Pa. 1995). In making our determination, we view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Murphy*, *supra* at 429.

Herein, an evidentiary ruling culminated in the grant of summary judgment. "It is well settled that the admission or exclusion of evidence is a matter within the sound discretion of the trial court, which may only be reversed upon a showing of a manifest abuse of discretion." *Eichman v. McKeon*, 824 A.2d 305, 319 (Pa.Super. 2003). "[A]n abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Betz v. Pneumo Abex LLC*, 44 A.3d 27 (Pa. 2012) (quoting *Paden v. Baker Concrete Constr.*, 658 A.2d 341, 343 (Pa. 1995)).

Preliminarily, we note that the Kellers seek to recover the proceeds from the sale of the Kathleen Street property owned by Deborah based on Mary's alleged oral direction that Deborah split the proceeds among them. Yet, they have not pled an oral agreement between Mary and Deborah, or a breach of such an agreement. Moreover, they insist that they are not seeking to enforce an oral contract. In addition, the Kellers abandoned their claim that Deborah unduly influenced their mother, which was the basis for imposition of a constructive trust.[2]

The Kellers bore the burden of proving that their mother conveyed the Kathleen Street property to Deborah with the condition that, upon its sale, she pay the proceeds to them in equal shares. There is no writing evidencing that proviso. The deed conveyed the property to Deborah in fee simple, and the Kellers stipulated that the deed was duly executed and valid. In her 2003 codicil to the 1997 will, Mary acknowledged that the Kathleen Street property had been deeded to Deborah, bequeathed her personal property to Deborah, but directed Deborah to permit each of her sons to choose some personal property prior to its sale. The codicil did not reference or confirm

---

[2] Although the Kellers originally pled that Deborah exerted undue influence over Mary and "was thereby able to induce Mary A. Keller to divert Mary A. Keller's assets to her and away from her sons, who were the natural objects of her bounty[,]" they abandoned any claim of undue influence prior to trial. Complaint, ¶ 29, at 6.

any prior instruction to Deborah to convey the proceeds from a subsequent sale of the house to the sons.

In their pre-trial statement, the Kellers represented that "most if not all of our witnesses will be testifying to statements of intent of Mary Keller while she was living." Plaintiffs' Pre-Trial Statement, 8/14/14, at 4. It was undisputed that Mary conveyed the Kathleen Street property to Deborah in fee simple. Nonetheless, the Kellers would testify that their mother told them that she directed Deborah to transfer the proceeds from any sale of the house to them. Adamant that that they were not proceeding on a contract theory, the Kellers alleged that Deborah failed to obey Mary's directive to transfer the sale proceeds to the sons. *Id*. at ¶ 30.

The Kellers argue first that their mother's statements to them are not hearsay because they offered them not to prove the truth of the matter asserted but only to show that Mary gave the instruction to Deborah Miller, "the central fact at issue in the present case." Appellant's brief at 15. The Kellers rely upon *American Future Systems, Inc. v. Better Business Bureau of Eastern Pennsylvania*, 872 A.2d 1202 (Pa.Super. 2005), where out-of-court customer complaints were held not to be hearsay because they were offered to prove that complaints were made, not that the complaints were credible. Herein, the trial court rejected this argument, finding that the statement itself was not an instruction but was being offered to prove the

truth of the matter asserted: that Mary gave a specific instruction to Deborah.

We agree with the trial court. Pa.R.E. 801(c) defines hearsay as "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." The official comments to Pa.R.E. 801 explain that questions, exclamations, offers, instructions, warnings, and other non-assertive communications are not hearsay. A statement is hearsay only if offered to prove the truth of the matter asserted in the statement. The comments further explain that sometimes statements are legally significant regardless of whether they are true or false, such as a statement constituting an offer, acceptance, or notice. Such statements are not hearsay when simply offered to prove that they were made.

The statement herein was not an instruction. The Kellers offered Mary's out-of-court statement to prove that she gave an instruction to Deborah, which was the matter asserted in the statement. Thus, it was offered for the truth of the matter asserted and constitutes inadmissible hearsay.

Alternatively, the Kellers maintain that their mother's statement falls within the hearsay exception for the declarant's state of mind under Pa.R.E. 803(3), which provides:

(3) Then-Existing Mental, Emotional, or Physical Condition. A statement of the declarant's then-existing state of mind (such as motive, intent or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will.

As this Court held in *Schmalz v. Mfrs. & Traders Trust Co.*, 67 A.3d 800, 802 (Pa.Super. 2013), the state of mind exception is ordinarily applicable in three circumstances. It may be used to prove the declarant's state of mind when that state of mind is an issue directly related to a claim or defense in the case. The exception has also been invoked to circumstantially prove that a declarant, after making the statement, acted in conformity with his or her statement. *See Commonwealth v. Riggins*, 386 A.2d 520, 526 (Pa. 1978) (victim's sister permitted to testify that victim stated to her on the evening of the killing, after a phone call, that defendant was expected to visit the home later that evening to show willingness of victim to admit him and opportunity for the defendant to commit the murder). Finally, an out of court statement related to the person's memory or belief is admissible in the limited instance where it relates to the "execution, revocation, identification or terms of the declarant's will." Pa.R.E. 803(3).

We held in *Commonwealth v. Begley*, 780 A.2d 605, 623 (Pa. 2001), that "the determination of whether out-of-court statements are admissible under the state of mind exception to the hearsay rule is within

the sound discretion of the trial court and will be reversed only upon an abuse of that discretion." Therein, the trial court ruled that the victim's brother could testify that his sister told him in casual conversation that she was going to get a job from the defendant for $15 an hour guarding a female victim/witness in a safe house. The court reasoned that the testimony was admissible under the state of mind exception to the hearsay rule as circumstantial evidence that, shortly before her disappearance, the victim intended to accept that job, and she subsequently acted in accordance with her stated intent. Additionally, the trial court specifically instructed the jury that it could only consider the testimony to establish the victim's intent at the time of the conversation. N.T., 7/16/96, at 555. In affirming, the Supreme Court reiterated the rationale for the state of mind exception:

> Intention, viewed as a state of mind, is a fact, and the commonest way for such a fact to evince itself is through spoken or written declarations. It is therefore because of the impossibility, in many cases, of proving intention apart from personal declarations, that they are admitted. The true basis of their admission, then, is necessity, because of which an exception to the hearsay rule is recognized. . . . *Commonwealth v. Marshall*, 287 Pa. 512, 522, 135 A. 301, 304 (1926).

*Begley*, *supra* at 624.

The Kellers contend that the proffered statement is a declaration of their mother's intent and plan. We disagree. The statement does not describe Mary's future intent but relates to past events. The Kathleen Street

- 10 -

property had already been deeded to Deborah and any alleged instruction would have been given prior to that conveyance. While an out-of-court statement is admissible to prove that the declarant subsequently acted in conformity with that statement, the Kellers impermissibly proffer it to prove the truth of past events. *See Commonwealth v. Levanduski*, 907 A.2d 3 (Pa.Super. 2006) (*en banc*) (a statement relating to past events based on memory or belief is not admissible under Pa.R.E. 803(3) to establish the truth of those events, absent relation to the execution, revocation, identification, or terms of the declarant's will).

We agree with the trial court that the state of mind exception to the hearsay rule is inapplicable on the facts herein. We find the Kellers' allusions to their mother's state of mind were being "used as a conduit to support the admission of fact-bound evidence to be used for a substantive purpose." *Schmalz*, *supra* (quoting *Commonwealth v. Moore*, 937 A.2d 1062, 1073 n.6 (Pa. 2007)). Having correctly concluded that Mary's alleged oral statement was inadmissible hearsay, the trial court properly found that without it, the Kellers could not prove their claim and granted summary judgment. Thus, we need not reach the issue as to whether the statute of frauds also operated to bar such evidence.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/1/2015