J-S29034-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JILL SHERWOOD | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ERIE INSURANCE EXCHANGE | : | No. 17 WDA 2025 |

Appeal from the Judgment Entered December 19, 2024
In the Court of Common Pleas of Allegheny County
Civil Division at GD-19-15557

BEFORE: NICHOLS, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.: **FILED: NOVEMBER 20, 2025**

Jill Sherwood (Appellant) appeals from the judgment entered in favor of Erie Insurance Exchange (Erie) after a jury determined that Erie did not breach its agreement to insure Appellant's home. We affirm.

*Factual and Procedural History*

Appellant's home sustained water damage during two separate incidents that occurred on November 9 and 16, 2018. Consequently, Appellant submitted claims to her insurer, Erie, which "issued payments in excess of $200,000 under three coverages; structure, contents and loss of use." Appellant's Brief at 5. Appellant's complaint is that Erie denied her claims "for an additional $50,000 worth of contents and replacement of the HVAC system." *Id.*

The trial court explained:

Erie approved a significant portion of [Appellant's] claims, disbursing payments totaling about $220,000 to [Appellant], who purchased the [home] for $133,000 just seven years before the water loss events. Pertinent[ly], [Appellant] alleged that water breached the [home] and damaged the HVAC system's ductwork, the breach caused dangerous mold growth, and that remediation contractors errantly removed floor tile containing asbestos, which contaminated the HVAC system. Thus, in addition to payments Erie made, [Appellant] sought payment to, *inter alia*, fully replace the HVAC system, including ductwork, and corresponding site preparation and concrete work to replace the HVAC system, which was installed underground when the home was constructed.

During the ordeal, [Appellant claimed that she] **learned from a[n] HVAC technician** that the HVAC system sustained water damage — damage [Appellant] attributed to the water loss event — which supposedly required a full system replacement. [Appellant] learned of the purported asbestos release **when contractors told her** "that asbestos was blown throughout her home by the water remediators and subsequently infiltrated her heating/cooling ducts as well as settled on items of personal property present in the home." Likewise, [Appellant] **relied on more out-of-court statements** in deciding that "she had to dispose of multiple household fixtures and items of personal property due to asbestos and mold contamination."

Trial Court Opinion (TCO), 4/4/25, at 2-3 (emphasis in original, citations omitted).

On March 2, 2021, Appellant filed a complaint, followed by an amended complaint on August 23, 2022, alleging that Erie breached the contractual terms of her homeowners insurance policy.[1] Trial was scheduled to begin on May 21, 2024. The trial court observed:

---

[1] In her amended complaint, Appellant added a second count for "bad faith, claims handling." N.T., 5/23/24, at 393. As Erie's counsel stated, the bad faith claim was "severed and stayed" and "not part of this case." *Id.* at 393, 409.

By the eve of trial, [Appellant] offered no expert witness reports or testimony or declarant witness testimony to support her claim that the water loss events damaged the HVAC system. Consequently, Erie filed a Motion *In Limine* requesting that this [c]ourt preclude [Appellant] from "testifying or arguing that water damage necessitated the replacement of all heating and cooling ductwork" at the [home]. Similarly, because [Appellant] offered no expert witness reports or testimony to support her claim that asbestos contaminated her home or personal property, Erie filed a Motion *In Limine* requesting th[e c]ourt "to omit asbestos contamination hearsay advice, declarations and statements for their testimony and arguments in the presence of the jury."

*Id.* at 3-4 (citations omitted).

The trial court heard argument on Erie's motions *in limine* in advance of trial. The court denied the motions, but advised counsel:

I think you have disputed facts here that should be put before a jury. Many of them go to the weight, so I think you're going to have different presentations for both [parties] on the claims process that the jury should hear. And certainly, … for any hearsay, any objections that come up, I will rule accordingly at that time.

N.T., 5/21/24, at 23.

The four-day trial began on May 21st and concluded on May 24, 2024.[2] Appellant testified and presented testimony from Erie's "property field adjuster," Eric Jantsch. N.T. at 341. For the defense, Erie presented testimony from three individuals who were involved with repairing the home's water damage: Peter Kandravy, the owner of Servpro water mitigation and remediation; Brian Oxendale, an employee with Specialty Cleaning Services

---

[2] The notes of testimony are contained in one volume which we will refer to prospectively as "N.T."

(SCS); and Mark Barlow, an employee with Insurance Restoration Consultants (IRC).[3]

Mr. Jantsch testified that he had worked for Erie for 20 years and handled hundreds of water damage claims. *Id.* at 371. He explained:

[T]he way the process works with Erie Insurance, the insured calls, makes the claim, there's a minimal amount of information that's taken to set the claim up, and then the supervisor assigns the claim. When I get the assignment, I review that information and that's the beginning of my involvement in the claim.

\*\*\*

When I first get the assignment, I review the claim to see what the date of loss is, what the address is, what the description is of what happened. And then I look to see generally what the coverages are so I have an idea of what [will] be covered as part of the loss.

\*\*\*

I call the insured, I tell them who I am, I tell them what the claim process is going to be. And I say at the beginning of the process [that] we get a recorded statement.

\*\*\*

I say that I'm going to get a recorded statement, [which] involves me putting some information on a paper and [I] ask … a few questions about what happened. And then after the recorded statement is taken, I review the claim process. I tell [the insured] what [their] policy is, what [the] deductible is. I [explain,] based on the information I have at that time[,] what the expectation is … going forward.

*Id.* at 344-46.

_____

[3] The trial court accepted Mr. Barlow as "an expert in the cause and origin of property damage and restoration of property." *Id.* at 604.

Mr. Jantsch testified that after he obtains a recorded statement, he schedules an inspection of damages. *Id.* at 347. During the inspection, he gets an "overview of the contents [of the home, and] take[s] photographs." *Id.* at 372. Mr. Jantsch "look[s] for things that are obviously affected by water." *Id.* He also "tell[s] the insured what [he is] going to do[,] and … ask[s] them to point out anything that they're aware of so that [he does not] miss anything." *Id.* at 349. Mr. Jantsch explained that he provides the insured with an estimate, and tells the insured that "additional things [can] be considered," and "recommend[s] that they share [additional information] with their contractor so that the insured's contractor can call [him]." *Id.*

In Appellant's case, Mr. Jantsch conducted inspections of Appellant's home in November 2018 and January 2019. *Id.* at 371, 438. Mr. Jantsch stated that at the time of the second inspection, the "the asbestos remediation had been done." *Id.* at 355, 364. Erie had also paid "the full amount" for Appellant's mold claim. *Id.* at 359. However, Mr. Jantsch considered Appellant's claims to be "complicated." *Id.* at 376. He noted that Appellant had requested to have ductwork "replaced along with the furnace," and described the parties' dispute concerning coverage of the HVAC system as "an ongoing thing for a period of time." *Id.* at 389, 401. Mr. Jantsch explained:

> I'm the property adjuster, the property is the home and contents that I'm adjusting. I have to get information from all different sources. I get information from the insured, I get information from the Mold Man, I get information from Servpro, I get information from plumbing, I get information from IRC, I get information from SCS, I do my own inspection. I had to adjust all that. So there [are] conflicts of information, some things that

don't [align] and there are … doubts that are created, and I have to somehow get this all together and make decisions that are reasonably supported by the choices I make.

*Id.* at 379.

From the information he obtained from various professionals, Mr. Jantsch concluded:

[T]he system itself, the HVAC system wasn't damaged by water. The ductwork itself was not damaged by water. The ductwork had already been denied for wear, tear and deterioration. The cleaning is a part of the loss that had been covered, so it was reasonable that potentially it would need cleaned.

*Id.* at 398-99. Mr. Jantsch reiterated that the furnace "wasn't damaged by the water." *Id.* at 399. He also stated that he had "no information that said there was any issue with the furnace except for [Appellant] saying it didn't work." *Id.*

Appellant's counsel asked Mr. Jantsch if it was his "understanding[,] that if an insured submits information saying 'I think this is a covered loss', [do] you have to respond to that?" *Id.* at 417-18. Mr. Jantsch answered, "I did respond to that." *Id.* at 418. Appellant's counsel specifically asked Mr. Jantsch if he had received "something from Spurk HVAC?"[4] *Id.* at 563. Mr. Jantsch said that he could not remember, and after reviewing a document at counsel's request, he stated that it "looked vaguely familiar," although he was

_____

[4] Appellant had testified that she obtained "paperwork" from "Home Depot, from Spurk, [and] a couple different places" for the cost of replacing the HVAC system. *Id.* at 298.

not sure "when [he] may have looked at it." ***Id.*** Appellant's counsel asked Mr. Jantsch to read the document to the jury. Mr. Jantsch read:

> Furnace and AC installation. This proposal was being provided to address the homeowner's existing heating and cooling forced air system, which has been exposed to flood water damage. Per our professional evaluation, the air handling equipment and air distribution system has been exposed to hazardous debris leaving the system unsafe to operate. We highly recommend a full system replacement including the equipment and air distribution system.

***Id.*** at 563-64.

Counsel continued to question Mr. Jantsch, who repeated that he was unsure of when he may have seen the document, and stated that he did not "recall ever having a direct response" to it. ***Id.*** at 564. At that point, Appellant's counsel identified the document as the "Spurk Proposal," and offered it into evidence as Exhibit 30. ***Id.*** Erie's counsel objected based on the document being hearsay, *i.e.*, "an out-of-court statement being offered for the truth of the matter asserted." ***Id.*** at 565. Erie's counsel stressed that no one was present "from Spurk to be available for cross-examination." ***Id.*** at 565-66. The trial court sustained the objection. ***Id.*** at 566. Erie's counsel then requested that the court strike Mr. Jantsch's "answers relative to what was in the Spurk [P]roposal." ***Id.*** The court denied the request on the basis that Mr. Jantsch's testimony was "fair in terms of his notice and understanding" of the HVAC claim. ***Id.*** at 567.

Erie's counsel proceeded to question Mr. Jantsch:

Q. With respect to the … claim about the HVAC, the fact that the furnace didn't work, [did] you [discuss the HVAC] with [Appellant] at the time of your first recorded statement with her?

A. Yes.

Q. What did she say at that point?

A. I think she said it was working.

Q. Did you ever hear after that during that one-year period thereafter that the furnace wasn't working, didn't function?

A. No.

Q. In your experience as an adjuster[,] if the furnace isn't working or the HVAC system isn't working, even though nobody is in the house, is that the sort of thing that you hear about fairly quickly?

A. Yes.

*Id.* at 538. Mr. Jantsch added that Appellant never provided him with "any evidence of any contaminants in any portion of the HVAC system." *Id.* at 576-77.

Trial concluded on May 24, 2024, when the jury returned a verdict in favor of Erie. Appellant filed a timely post-trial motion. Appellant requested a new trial on the basis that the trial court had erred by "refusing the admission of the Spurk [Proposal] on the grounds of hearsay[,] despite the fact [that Erie] admitted receiving and reviewing the document and not responding." Motion for Post-Trial Relief, 6/3/24, at 1. Both parties filed briefs, and the court heard oral argument on November 14, 2024. On December 3, 2024, the court entered an order denying the motion. Judgment was entered on December 19, 2024. On December 30, 2024, Appellant filed

a notice of appeal, followed by a court-ordered Pa.R.A.P. 1925(b) concise statement on January 16, 2025.

Appellant presents the following issue for review:

Whether the [t]rial [court] erred as a matter of law in excluding the HVAC Proposal from Spurk on the [g]rounds that it was hearsay[,] despite the fact that the document was offered not to prove that HVAC system was contaminated[,] but to show that [Appellant] provided Erie with documentation for a claim to which Erie never responded in breach of Erie's obligations under the policy[?]

Appellant's Brief at 4.

*Discussion*

As noted above, the trial court denied Appellant's request for a new trial. "Absent a clear abuse of discretion by the trial court, appellate courts must not interfere with the trial court's authority to grant or deny a new trial." ***Am. Future Sys., Inc. v. BBB***, 872 A.2d 1202, 1212 (Pa. Super. 2005) (citation omitted). Viewing the evidence in the light most favorable to the verdict winner, we must consider whether a new trial would produce a different verdict. ***Id.*** This Court has held repeatedly that if there is any support in the record for the trial court's decision to deny a new trial, that decision must be affirmed. ***Id.*** In this case, the record supports the trial court's denial of a new trial.

Appellant claimed she was entitled to a new trial because the trial court did not permit the admission of the Spurk Proposal. Admission of evidence is within the discretion of the trial court. ***Id.*** To constitute reversible error, an

evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party. *Id.* Generally, hearsay is inadmissible at trial. Pa.R.E. 802. However,

> where an out-of-court statement is not admitted for the purpose of proving the truth of what was said, the hearsay rule does not bar admission of that statement. "Testimony as to an out of court statement, written or oral, is not hearsay if offered to prove, not that the content of the statement was true, but that the statement was made."

*Am. Future Sys., Inc.*, 872 A.2d at 1213 (citations omitted).

Appellant argues that the trial court "misconstrued the issue presented." Appellant's Brief at 10. Appellant maintains that the court erroneously focused on evidence of Erie's response in January 2019 to Appellant's claim involving ductwork. *Id.* Appellant claims that she did not submit a claim for the HVAC system until October 2019. *Id.* She asserts that the court "presumed that Erie had responded to the later claim by conflating two separate claims that were submitted 9 months apart." *Id.* Appellant maintains that "Erie, in violation of its contractual duties, did not respond at all." *Id.* at 12. She states, "it is the receipt of the documentation that is relevant, not whether the statements within are true." *Id.* at 13. According to Appellant:

> Reviewing the document itself would have allowed the Jury to see that the Spurk Proposal specifically informed Erie, contrary to Mr. Jantsch's testimony, that they had been provided documentation that the HVAC system needed to be replaced due to the water damage that was the subject of the claim.
>
> As any litigator or trial judge knows a document trumps testimony.

*Id.* at 14.

To the contrary, Erie argues that the Spurk Proposal did not have to be admitted into evidence to prove notice. Erie's Brief at 8. Erie emphasizes that it never contested notice of the Spurk Proposal. *Id.* In addition, Erie states:

> The denials relative to HVAC replacement merely started with Mr. Jantsch's denial letter of January 25, 2019, but also included the itemization of the HVAC and plumbing damages that would be covered as outlined in [Erie's] May 10, 2019 letter to Appellant. Mr. Jantsch testified that the itemization of covered damages did not include the replacement of the HVAC system.
>
> Further, Appellant admitted at trial to receiving an email from Mr. Jantsch dated June 27, 2019, in which he indicated that any additional claims would have to [be] completely supported, including claims for water damaged property such as the HVAC system. The June 27, 2019 email provided that in order to be fully supported, any claimed water-damaged property would have to be presented for inspection. Appellant acknowledged at trial that she did not present the HVAC system for inspection to establish any water-related damage.
>
> …  As such, the HVAC claims had been denied on multiple occasions before the Appellant provided the Spurk [Proposal] for consideration, and the court did not misconstrue the limited denial in January, 2019 with any denial related to the Spurk Proposal. The evidence reveals regular and repeated denials as to replacement of the furnace or HVAC system.[5]  Appellant's

_____

[5] Erie also refers to evidence that it retained IRC to address pending claims. *Id.* at 4. Erie states:

> Engineer Mark Barlow of IRC inspected the home twice in February, 2019, prepared a report[,] and testified at trial. Mr. Barlow's relevant testimony included his inspection and photographs of the below grade HVAC ducts. Mr. Barlow opined that the ductwork had been subjected to flooding for decades

*(Footnote Continued Next Page)*

counsel has cited no cases indicating that once a particular claim has been denied, that it must be redenied every time it is reraised by an insured.

*Id.* at 12-13.

We agree that the trial court did not misconstrue Appellant's argument. The trial court recognized that Appellant offered the Spurk Proposal "to demonstrate that [Appellant] met her burden under the homeowner policy to submit documentation of covered losses[,] and that [Erie] did not comply with the contract by failing to reject the claim, accept the claim, or request additional documentation for the claim." TCO at 6 (citation omitted).

In addition, we discern error no abuse of discretion in the trial court's rejection of Appellant's argument. The court reasoned:

[Appellant's] own evidence — a letter from property adjuster Eric Jantsch dated January 25, 2019 — explained that Erie "determined that coverage does not exist for ... deteriorated ductwork" pursuant to the policy, demonstrating that (a) [Erie] knew that [Appellant] sought to claim the HVAC system under the policy and rejected the claim[,] and (b) that [Appellant] knew that [Erie] knew and sufficiently responded, notwithstanding the subsequently produced … Spurk [Proposal]. Furthermore, while this [c]ourt sustained [Erie's] objection to admitting … [the] Spurk [P]roposal, it permitted [Mr.] Jantsch to "read into the record word-for-word the portion of the Spurk [Proposal] discussing the water/flood exposure, hazardous debris and need for replacement of the system." Thus, the jury received and considered precisely

_____

before the water losses and that the damage to the ducts was unrelated to the water losses.

*Id.* (citation omitted).

the information that [Appellant] claims this [c]ourt erroneously precluded the jury from considering.

\*\*\*

[A]dmitting … the Spurk [P]roposal, hearsay and all, would amplify the hearsay statements therein, allude to "hazardous debris," *i.e.*, asbestos and mold, and gesture to the unsubstantiated causal connection between the water loss event and the condition of the air ducts, effectively and improperly rigging the minds of jurors. While [Appellant's] counsel's efforts were mere gamesmanship and zealous representation, "rules prohibiting hearsay are often said to be designed in part to prevent foul play."

*Id.* at 6-7 (citations omitted).

Appellant does not cite any legal authority for her assertion that Erie was required to respond to her claim for HVAC coverage in October 2019. *See Commonwealth. v. Reyes-Rodriguez*, 111 A.3d 775, 781 (Pa. Super. 2015) (stating that "[w]hen an appellant cites no authority supporting an argument, this Court is inclined to believe there is none"). Like Erie, we have not found any authority to indicate that "once a particular claim has been denied, that it must be redenied every time it is reraised by an insured." Erie's Brief at 13. However, we note that this Court has affirmed the rejection of a bad faith claim against a homeowner's insurer where the evidence indicated that the claim adjuster "failed to respond to one letter, and return a few of [the insureds'] phone calls."[6] *Greene v. United Servs. Auto. Ass'n*, 936 A.2d 1178, 1187 (Pa. Super. 2007). Following a non-jury trial in *Greene*, the

---

[6] Erie's counsel and the court confirmed at trial that the underlying dispute did not involve bad faith. N.T. at 393, 409.

trial court concluded that where the "facts divulged a convoluted procedural history," the claim adjuster's inaction was "inadvertence rather than an act of ill will." *Id.* In this case, even if Mr. Jantsch did not respond to Appellant's claim for HVAC coverage in October 2019, it would be reasonable for the jury to conclude that the failure was inadvertent.

Finally, the record supports the trial court's conclusion that had it erred by refusing to admit the Spurk Proposal, the ruling did not prejudice Appellant. TCO at 8. The court reiterated that it permitted Appellant to offer ample testimony about the Spurk Proposal, and noted that Appellant "ask[ed] the jury for damages of $16,300 for the HVAC system, the exact amount stated in the Spurk [P]roposal." *Id.* (citation omitted). In the words of the trial court, the "jury just reached a conclusion different than what [Appellant] believes." *Id.* at 9-10.

For the above reasons, we discern no error or abuse discretion which would entitle Appellant to relief.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 11/20/2025