J-A10028-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JOSE BAEZ | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JUAN ESPANAL | : | |
| | : | |
| Appellant | : | No. 850 EDA 2020 |

Appeal from the Judgment Entered February 5, 2020
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  No. 180302714

BEFORE:   PANELLA, P.J., OLSON, J., and COLINS, J.[*]

MEMORANDUM BY OLSON, J.:                **FILED OCTOBER 26, 2021**

Appellant, Juan Espanal, appeals from the judgment entered on February 5, 2020, in favor of Plaintiff Jose Baez (hereinafter "Plaintiff") and against Appellant, in the amount of $20,000.00.  We affirm.

In 2013, Plaintiff and Appellant entered into a ten-year, mixed-use lease for the real property located at 2630 Dickinson Street in Philadelphia; Plaintiff was the tenant and Appellant was the landlord of the lease.  Under the terms of the lease, Plaintiff rented the first floor of the building to use as a retail grocery store and the second floor to use as a private, residential apartment. Commercial Lease, 6/7/13, at 2.

According to Plaintiff's complaint, "[o]n or about September 1, 2017, [the rental] property began to fall apart and the walls began to cave in, due

_____

[*] Retired Senior Judge assigned to the Superior Court.

to structural damage that was in no way the fault of Plaintiff." Plaintiff's Complaint, 6/19/18, at ¶ 12. As a result, "Plaintiff was no longer able to reside or operate his business in the leased premises and was forced to relocate his business and residence." *Id.* at ¶ 16. Plaintiff sought damages for the loss of his quiet and beneficial enjoyment of the property, the loss of his "business and personal property including . . . freezers, refrigerators, shelving and furniture," and other, various expenses. *Id.* at ¶ 17.

Appellant answered the complaint and claimed that Plaintiff's damages were limited by a certain article in the lease. *See*, *e.g.*, Appellant's Answer and New Matter, 8/20/18, at ¶ 3. Further, within Appellant's new matter, Appellant claimed that Plaintiff's complaint was improperly verified. *Id.* at ¶ 32.

The case proceeded to a bench trial. During trial, Plaintiff's daughter-in-law, Nyrie Baez Vargas, testified that she worked in Plaintiff's corner store and lived in the upstairs apartment from 2014 until November 2017.[1] N.T. Trial, 12/5/19, at 13. Ms. Vargas testified that, when she originally began working and living in the building, the building "was in good condition." *Id.* at 14. However, Ms. Vargas testified, as the years went on, the building's walls began to bulge and buckle. *See id.* She testified that

---

[1] Ms. Vargas testified that, in 2017, the following individuals lived in the building's upstairs apartment: Plaintiff, Ms. Vargas, Ms. Vargas' husband, Ms. Vargas' daughter, Plaintiff's girlfriend, and Plaintiff's girlfriend's two children. N.T. Trial, 12/5/19, at 12.

Plaintiff asked Appellant to fix the walls "plenty of times" over the years, but Appellant "wouldn't reply." *Id.* at 15. She testified that, when Appellant attempted to rectify the dangerous condition of the building, "all [the workers] did was put, like sticks against the wall to hold the wall up and that was about it." *Id.* She testified that this action made the condition of the building "even worse." *Id.*

Ms. Vargas testified that, in November 2017, she, Plaintiff, and every other family member living in the apartment vacated the building, as they feared the building would collapse. *Id.* She testified:

> We didn't have time to take everything out [of the store or the apartment]. And when we did finally leave the [building], they just told [Plaintiff] to put his refrigerators and everything that he paid for out of his pocket all the way to the right side of the building because it was the left side that they had to fix, the wall. . . . [T]hey told us in 15 days we could go back.

*Id.* at 16-17. Ms. Vargas testified that, "once we moved in November 2017, we couldn't go back [inside the building] after he shut[] down and passed the keys on to the construction people." *Id.* at 41. Moreover, she testified that it is now "past two years" since they vacated the building and "we still [have not gotten] back our stuff." *Id.* at 17.

Ms. Vargas testified that Plaintiff lost approximately $15,000.00 in store inventory and $10,000.00 in clothing and furniture from the apartment. Further, she testified that Plaintiff was forced to spend $30,000.00 to purchase new fixtures and appliances for the relocated store. *Id.* at 17 and 20-21.

- 3 -

Plaintiff also testified at trial – and, Plaintiff's testimony was consistent with that provided by Ms. Vargas. *See id.* at 44-75.

On December 18, 2019, the trial court entered its decision in favor of Plaintiff and against Appellant, in the amount of $20,000.00. As the trial court declared in its later-filed opinion, it concluded that Appellant breached the lease. Further, the trial court determined that Plaintiff had been damaged in the amount of $20,000.00, as Appellant "fail[ed] to provide [Plaintiff] access to the leased premises in order to remove his property." Trial Court Opinion, 11/17/20, at 7. The trial court explained: "Consequently, [Plaintiff] was forced to replace inventory, shelving, food preparation equipment, and industrial refrigeration and freezer units for his grocery store's new location. Additionally, [Plaintiff] had to replace furniture and personal items for his family's new living space." *Id.*

On February 5, 2020, the trial court denied Appellant's timely post-trial motion and entered judgment on its decision. Appellant filed a timely notice of appeal. He raises three claims to this Court:

> [1.] Whether the trial court committed an error of law, abused its discretion or otherwise ruled improperly in finding that [Plaintiff's] complaint is not a nullity?
>
> [2.] Whether the trial court committed an error of law, abused its discretion or otherwise ruled improperly in finding that [Appellant] breached the covenant of quiet enjoyment in the lease entered between [Plaintiff and Appellant]?
>
> [3.] Whether the trial court committed an error of law, abused its discretion or otherwise ruled improperly in []

> making up an arbitrary value regarding [Plaintiff's] alleged damages?

Appellant's Brief at 4.[2]

First, Appellant claims that the trial court erred when it refused to find Plaintiff's complaint a "nullity," as Plaintiff did not verify the complaint. *Id.* at 12-13. This claim is waived, as Appellant did not file preliminary objections to Plaintiff's complaint and, therefore, Appellant did not provide the trial court with an opportunity to strike the complaint.[3] *See* Pa.R.C.P. 1028(a)(2) ("Preliminary objections may be filed by any party to any pleading and are limited to the following grounds . . . failure of a pleading to conform to law or rule of court"); *Monroe Contract Corp. v. Harrison Square, Inc.*, 405 A.2d 954, 959 n.5 (Pa. Super. 1979) ("verification [is] necessary [for] the protection of the party, not [for] the jurisdiction of the court"); 2 Goodrich Amram 2d § 1024(a):8 ("[a] defective verification must be attacked promptly by preliminary objection. Such an error cannot be first raised in a brief in support of some other objection. If the party affected does not object to the

---

[2] For ease of discussion, we have re-numbered Appellant's claims on appeal.

[3] Within Appellant's new matter, Appellant declared that Plaintiff's complaint was not properly verified. *See* Appellant's Answer and New Matter, 8/20/18, at ¶ 32. However, Appellant's observation in new matter did not preserve any claim on appeal, as it did not provide the trial court with an opportunity to strike Plaintiff's complaint for failure to conform to law. Further, as the trial court notes, "Appellant failed to file any motions with [the trial court] seeking to have the complaint stricken or dismissed, and failed to raise the issue in a motion *in limine* prior to trial." Trial Court Opinion, 11/17/20, at 4 (some capitalization omitted). The claim is thus waived.

defects in a verification, the objection is waived. A court should not raise the defect *sua sponte*"); Pa.R.A.P. 302(a) ("[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal").

Next, Appellant claims that the trial court erred when it concluded that he breached the covenant of quiet enjoyment in the lease.

As we have explained,

> [a] JNOV can be entered upon two bases: (1) where the movant is entitled to judgment as a matter of law; and/or, (2) the evidence was such that no two reasonable minds could disagree that the verdict should have been rendered for the movant. When reviewing a trial court's denial of a motion for JNOV, we must consider all of the evidence admitted to decide if there was sufficient competent evidence to sustain the verdict. In so doing, we must also view this evidence in the light most favorable to the verdict winner, giving the victorious party the benefit of every reasonable inference arising from the evidence and rejecting all unfavorable testimony and inference. Concerning any questions of law, our standard of review is *de novo*. Concerning questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the finder of fact. If any basis exists upon which the fact finder could have properly made its award, then we must affirm the trial court's denial of the motion for JNOV. A JNOV should be entered only in a clear case.

*Linde v. Linde*, 220 A.3d 1119, 1140 (Pa. Super. 2019) (quotations and corrections omitted), *quoting Am. Future Sys., Inc. v. BBB*, 872 A.2d 1202, 1215 (Pa. Super. 2005).

Regarding the covenant of quiet enjoyment and the doctrine of constructive eviction, we have explained:

> The legal implication of the covenant for quiet enjoyment, express or implied, is that the lessor will permit the tenant to

- 6 -

enjoy fully the demised premises subject to any rights of the lessor. The covenant is breached when a tenant's possession is impaired by the acts of the lessor or those acting under him. The impairment of the lessee's possession need not be total, but the utility of the premises must be substantially decreased by the landlord's interference with a right or privilege which is necessary to the enjoyment of the premises.

. . .

[C]onstructive eviction is one species of a violation of the lessee's right to quiet enjoyment. . . . In effect, constructive eviction occurs when a lessor's violation of a lessee's entitlement to quiet enjoyment is so extreme as to interfere seriously with the lessee's ability to use the leasehold as it was intended to be used, and the violation prompts the tenant to abandon the property within a reasonable amount of time.

*Sears, Roebuck & Co. v. 69th Street Retail Mall, L.P.*, 126 A.3d 959, 967-968 and 973 (Pa. Super. 2015) (quotations, citations, and corrections omitted).

Under our caselaw, "problems that might not constitute a constructive eviction were they isolated, rare, and promptly addressed by the landlord may rise to a constructive eviction when they persist, remain unremedied, and substantially interfere over time with the tenant's quiet enjoyment of the leasehold." *Id.* at 975-976.

Appellant claims that he could not have breached the covenant of quiet enjoyment, as both he and Plaintiff "knew of the issues regarding the structural aspects of the building in 2013 and the probability that the building would need repairs, which would require the building to be vacated during construction." Appellant's Brief at 9. This claim fails.

During trial, Plaintiff testified that, when he signed the lease in 2013, the walls had cracks in them, but "[t]he problem was not that big." N.T. Trial, 12/5/19, at 62. He testified that the condition of the walls became worse and worse over the years and that he constantly asked Appellant to fix the building, but his requests were ignored. *Id.* at 48. Plaintiff testified that, if Appellant had "been fixing [the building] little by little[,] the problem wouldn't be so big." *Id.* at 63. Nevertheless, Plaintiff testified that Appellant's neglect caused the walls to become so bad that, in November 2017, he was forced to vacate the building because he was afraid the building would collapse.[4] *Id.* at 49. Further, Ms. Vargas testified that the construction on the building still was not complete at the time of trial – which was over two years after they had vacated the property. *Id.* at 17 and 89.

Viewing this evidence in the light most favorable to Plaintiff, the evidence is clearly sufficient to support the trial court's conclusion that Appellant breached the covenant of quiet enjoyment. To be sure, Plaintiff testified that the cracks in the wall were "not that big" of a problem when he signed the lease in 2013 and that, if Appellant had been fixing the walls "little by little," the problem would not have escalated to the level it did. Plaintiff also testified that Appellant ignored his pleas to fix the building, while the condition of the building deteriorated to the point that it became dangerous

---

[4] During trial, Appellant agreed that the building was "dangerous" in 2017. N.T. Trial, 12/5/19, at 79-80.

and required Plaintiff and his family to vacate the building and their store. Under our precedent, these facts are sufficient to support a breach of the covenant of quiet enjoyment. **See Sears**, 126 A.3d at 975-976 ("problems that might not constitute a constructive eviction were they isolated, rare, and promptly addressed by the landlord may rise to a constructive eviction when they persist, remain unremedied, and substantially interfere over time with the tenant's quiet enjoyment of the leasehold"). Appellant's claim to the contrary thus fails.

Finally, Appellant claims that the trial court erred when it "ma[de] up an arbitrary value regarding [Plaintiff's] alleged damages."[5] Appellant's Brief at

---

[5] Within the argument section of Appellant's brief, Appellant declares, in conclusory fashion:

> The alleged damages suffered by [Plaintiff] were of his own making. First[,] he never read the lease and was unaware of Article 8, which specified the damages. Second, [Plaintiff] claims he was pushed out of the building when in fact, he knew he was supposed to leave in September, but pushed his departure to November. Third, [Plaintiff] is not entitled to damages under the contract and the plaintiff did not evict him for his own monetary gain. Finally, [Plaintiff's] evidence of damages was improperly admitted into evidence as the authenticity of the damages was never proved and the improper foundation laid out by [Plaintiff] make it impossible to adequately measure the damages.

Appellant's Brief at 18-19.

None of these claims are defended with any supporting argument and only the final subclaim is suggested in Appellant's Pennsylvania Rule of Appellate Procedure 2116 "statement of questions involved." **See** Appellant's Brief at 4 ("[w]hether the trial court committed an error of law, abused its discretion or otherwise ruled improperly in making up an arbitrary value regarding

*(Footnote Continued Next Page)*

4. This claim fails. As the trial court explained, Plaintiff "presented substantial evidence of the damages he sustained when Appellant prohibited the removal of his business and personal property from the leased premises." Trial Court Opinion, 11/17/20, at 7-8. According to the trial court:

> Business Property – [Plaintiff's] grocery store contained a multitude of business property including inventory, shelving, food preparation equipment and industrial refrigeration and freezer units [Plaintiff] purchased. [Ms. Vargas testified that Plaintiff lost approximately $15,000.00 in store inventory and was forced to spend $30,000.00 to purchase new fixtures and appliances for the relocated store.] . . .
>
> [Ms. Vargas] worked in the grocery store and resided in the upstairs apartment with [Plaintiff], a few of [Plaintiff's] children and [Plaintiff's] girlfriend. There was also testimony and a receipt demonstrating the cost of the refrigeration units [Plaintiff] had to re-purchase for his new grocery store location, since Appellant did not allow access to remove them. [Plaintiff] did not remove the business property when he vacated because he thought Appellant was repairing the building and that he would be able to re-open the store. There was testimony about [Plaintiff] helping [Appellant's] contractors move the equipment to the other side of the property so it would not be damaged during repair.
>
> Personal Property - The upstairs apartment contained [Plaintiff's] family's personal belongings. Both [Plaintiff] and [Ms. Vargas] testified to the new furnishings [Plaintiff] had recently purchased from Ashley [F]urniture. . . . [Ms. Vargas] testified they had spent about $10,000 to purchase the furniture but no receipts were provided. [Plaintiff] also

---

[Plaintiff's] alleged damages?"). Therefore, with the exception of the alleged arbitrariness of the trial court's damage determination, Appellant remaining, conclusory claims of error regarding damages are waived. Pa.R.A.P. 2116(a) ("[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby").

> gave an approximate dollar figure for the furnishings that was slightly higher than [Ms. Vargas] testified.

Trial Court Opinion, 11/17/20, at 8.

As the above demonstrates, the trial court's damages determination was not "arbitrary," but was based upon the clear and specific testimony of Plaintiff and Ms. Vargas. Therefore, Appellant's final claim on appeal fails.

Judgment affirmed. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/26/2021