J-S46019-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| LORI A. SCHMIDT | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHN R. SCHMIDT | : | |
| | : | |
| Appellant | : | No. 44 WDA 2023 |

Appeal from the Decree Entered December 7, 2022
In the Court of Common Pleas of Lawrence County Civil Division at
No(s):  10934 of 2018 C.A.

| | | |
|---|---|---|
| LORI A. SCHMIDT | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHN R. SCHMIDT | : | |
| | : | |
| Appellant | : | No. 80 WDA 2023 |

Appeal from the Decree Entered December 7, 2022
In the Court of Common Pleas of Lawrence County Civil Division at
No(s):  10934 of 2018

BEFORE:  DUBOW, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY MURRAY, J.:          **FILED: February 13, 2024**

John R. Schmidt (Husband) appeals, and Lori A. Schmidt (Wife) cross-appeals, the decree divorcing the parties and equitably distributing their marital assets.[1]  Upon careful review, we affirm the decree.

---

[1] On February 24, 2023, this Court consolidated the appeals.

1

Husband and Wife married in Allegheny County on May 24, 1997, and separated on October 15, 2018. The parties have three children.[2]

As described by the equitable distribution master,

Wife is forty-eight years old. She is in good health. Wife graduated high school from Seneca Valley High School and has a degree from Gannon University in Marketing and Communications. Wife is employed in the pharmaceutical industry. Her net monthly income is $9,035.19. Her monthly expenses are $7,925.00. Wife currently resides in the marital residence and is paying the mortgage, property taxes, utilities[,] and maintenance for the marital residence. Wife is currently paying the monthly car payment for [I.'s] car as well as other expenses related to the car. She is also making payments on two (2) personal loans which were used to pay for taxes.

Husband is fifty-three years old. He is in good health. Husband graduated high school from Fergus Falls High School and has an associate[s] degree in Art and Marketing. Husband is employed as a farmer with Humility of Mary. His monthly net income is $2,125.34. His monthly expenses are $2,132.00 Husband receives $571.28 per month in spousal support.

MRR, 12/23/20, at 6.

On October 15, 2018, Wife filed a complaint in divorce. The complaint included a claim for divorce and equitable distribution. … Husband filed a petition raising economic claims on November 13, 2018. The petition included a claim for equitable distribution, alimony, [] alimony *pendente lite*[,] and attorney fees and expenses.

*Id.* at 1 (capitalization modified).

---

[2] As noted in the master's report and recommendation (MRR), the children are I. (age 18 years); J. (age 15 years), and Ju. (age 12 years). Master's Report and Recommendation (MRR), 12/23/20, at 2.

2

On July 5, 2019, while the divorce action was pending, Husband filed a support action docketed at Lawrence County Domestic Relations (DR) Court number 324 of 2019. On October 23, 2020, after a hearing, the DR court awarded Husband monthly spousal support of $2,102.51 ($1,876.51 for current support and $226.00 for arrears), effective August 20, 2020. On February 21, 2020, the DR court upheld the award. DR Order, 2/21/20.

The master conducted hearings in the divorce action on August 19 and 20, 2020, and October 6, 2020. On December 23, 2020, the master filed the MRR regarding the divorce and equitable distribution of the marital assets. ***See generally*** MRR, 12/23/20. Husband and Wife both filed exceptions to the MRR.

On February 2, 2021, in the DR action, Wife filed a motion to suspend her spousal support obligation to Husband. The DR court denied Wife's motion the next day, recognizing that "[a]djustments can be made if necessary to the equitable distribution to accommodate any excess paid to [Husband] in the Domestic Relations Action." Trial Court Order, 2/3/21, ¶ 2.

On October 14, 2021, upon hearing oral argument and the submission of briefs by the parties, the trial court entered an order granting in part and dismissing in part the parties' exceptions to the MRR. The court's order included a correction/modification of its prior DR support award, terminating spousal support effective April 30, 2021. Trial Court Order, 10/14/21, ¶ 5. The order provided, "All payments of spousal support by the Wife to the

Husband (with the exception of any arrearage payment on arrearages incurred prior to April 30, 2021) shall be subtracted from the amount due to the Husband." *Id.*

Wife filed an application for reconsideration of the trial court's order regarding the parties' MRR exceptions. Wife challenged the stipulated value of her Traditional IRA. On November 24, 2021, the trial court granted reconsideration and stayed its October 14, 2021, order pending oral argument on Wife's application. Trial Court Order, 11/24/21.

On December 22, 2021, Husband filed a motion for reinstatement of spousal support. Husband argued the trial court improperly terminated spousal support, as no divorce decree had been entered. Motion to Terminate Support, 12/22/21, ¶¶ 2, 4, 6. The DR court denied Husband's motion that same day. Order, 12/22/21.

Finally, on December 7, 2022, the trial court entered a final divorce decree. Husband timely appealed both the divorce decree and the support determination. Wife cross-appealed the decree's equitable distribution of marital assets. The parties and the trial court have complied with Pa.R.A.P. 1925. We first address Husband's appeal.

## HUSBAND'S APPEAL

Husband presents the following issues for review:

I. Whether the court erred in terminating spousal support effective April 30th, 2021[,] prior to a divorce decree being entered?

4

II. Whether the court erred in determining [the] spousal support amount and [its] effective date?

III. Whether the court erred in ruling as inadmissible hearsay evidence of a broker's listing, which indicated the price of the marital residence and twenty acres [Wife] sought to list [*sic*] the property?

IV. Whether the court abused its discretion in valuing the marital home?

V. Whether the court erred by failing to place a value on the timber and divide the asset?

VI. Whether the court abused its discretion in failing to award alimony?

Husband's Brief at 4.

We are mindful of this Court's well-settled role in reviewing equitable distribution awards:

> Our standard of review in assessing the propriety of a marital property distribution is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence.

*McCoy v. McCoy*, 888 A.2d 906, 908 (Pa. Super. 2005) (quotations and citation omitted).

> This Court will not find an "abuse of discretion" unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

> Moreover, it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence. We are also aware that a master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties.

***Carney v. Carney***, 167 A.3d 127, 131 (Pa. Super. 2017) (citations omitted).

I.   **Whether the court erred in terminating spousal support effective April 30, 2021[,] prior to a divorce decree being entered?**

Husband challenges the trial court's termination of his spousal support prior to the court's entry of a divorce decree. Husband's Brief at 15. According to Husband, the trial court's October 14, 2021, order "inexplicably" terminated spousal support, "effective April 5, 2021, the date of oral argument on both parties' exceptions to the Master's report." ***Id.*** (punctuation modified). Husband challenges the following statement by the trial court:

> Because the divorce had not been bifurcated, the [c]ourt could not grant a divorce until equitable distribution issues had been resolved. While the Master's report had been submitted on December 23, 2020, the Exceptions that had been filed first by the Husband and then by the Wife created a delay in the time before the [c]ourt could grant the divorce, even though the time periods under [23 Pa.C.S.A. §] 3301(d) had long ago expired. Because the marital assets of the parties were substantial, a suspension of the monthly spousal support payments, while the Exceptions to the Master's report were pending, was not necessary inasmuch as an overpayment could be equalized by adjusting the equitable distribution to the parties. Because the [c]ourt ultimately determined that alimony was not appropriate and now alimony was awarded, the Husband's equitable distribution was reduced by the amount of all spousal support

6

payments made by Wife to the Husband after the end of April 2021.

*Id.* at 16 (citation omitted). Husband argues this statement contradicts "both procedure and the theories of support, alimony *pendente lite*, and[] alimony." *Id.* According to Husband, Wife could have filed a motion to bifucate, or an affidavit in accordance with Pa.R.C.P. 1920.42(c). *Id.* at 17. Because she failed to do so, Husband maintains Wife had a statutory duty

> to provide support to [Husband] until the divorce is terminated, which can only be suspended or eliminated upon evidence of a fault divorce[] caused by the receiving party. [Wife] provided no such evidence.

*Id.*

Husband additionally asserts that any support order would have been converted to alimony *pendente lite*, citing Pa.R.C.P. 1920.31. *Id.* Husband claims the trial court erred in making Wife's continued support obligation dependent on whether Husband was awarded alimony. *Id.* at 18-19. According to Husband, the trial court ignored "long held principles of law and detailed rules of procedure to intentionally favor [Wife]." *Id.* at 19.

> Our standard of review is well settled:
>
> We review spousal support cases for abuse of discretion. In order to overturn the decision of the trial court, we must find that it committed not merely an error of judgment, but has overridden or misapplied the law, or has exercised judgment which is manifestly unreasonable, or the product of partiality, prejudice, bias or ill will as demonstrated by the evidence of record.

7

***S.M.C. v. W.P.C.***, 44 A.3d 1181, 1185 (Pa. Super. 2012) (citations and internal quotation marks omitted).

"Married persons are liable for the support of each other according to their respective abilities to provide support as provided by law." 23 Pa.C.S.A. § 4321(1). "The duty to provide spousal support is derived from marital obligations, and that duty terminates when the marriage does[.]" ***Horn v. Horn***, 564 A.2d 995, 996 (Pa. Super. 1989) (citations omitted). "Spousal support is designed to ensure the dependent spouse a reasonable living allowance." ***Id.***

Regarding the interlocutory nature of spousal support orders, this Court has recognized that

> a spousal support order entered during the pendency of a divorce action is not appealable until all claims connected with the divorce action are resolved. The rationale behind this rule is that, for purposes of judicial efficiency, in the event that an initial award of interim relief is granted in error, the court has the power to make adjustments in the final settlement via the equitable distribution of marital property. Thus, when all economic matters involved in a divorce are resolved, **any support order can be reviewed and corrected** when the court finalizes the equitable division of the property.

***Capuano v. Capuano***, 823 A.2d 995, 998-99 (Pa. Super. 2003) (citations omitted, emphasis added) (quoting ***Thomas v. Thomas***, 760 A.2d 397, 398 (Pa. Super. 2000)).

Husband acknowledged in his brief that on March 21, 2021, the DR court granted Husband reconsideration of its support award, based on his claim of

an incorrect net monthly income assigned to Wife. Husband's Brief at 11. Husband further explained, "**At the request of the parties**, [the DR court] did not file a new order as the exceptions were pending" in the equitable distribution matter. *Id.* (emphasis added). Further, this Court has expressly recognized that spousal support orders may be reviewed and corrected, upon finalization of the equitable distribution of marital property. *See Capuano*, 823 A.2d at 998-99. We discern no error or abuse of the termination of support, as Husband's economic issues were addressed through the equitable distribution. Husband's challenge to the procedure used by the trial court warrants no relief.

**II. Whether the court erred in determining spousal support amount and [its] effective date?**

Husband argues that the trial court erred in determining the amount of spousal support and its effective date. Husband's Brief at 19. Husband challenges the court's calculation of Wife's income, arguing that Wife misrepresented her income at the support hearing. *Id.* at 21-22. According to Husband,

a. At the October 23, 2019, hearing before the Domestic Relations Office, Wife indicated she began new employment as a pharmaceutical representative in March 2019, with a salary of $150,000 per year, and a one-time bonus of $11,500.00. *Id.* at 21. Wife further testified her weekly contribution of $346.15 was mandatory, with a matching contribution by her employer. She further testified to a monthly mortgage payment of $3,131.83.

b. Husband testified to a gross income of $33,000.00 per year.

c. Based on Wife's representations, her net monthly income was determined to be $9,035.19. Spousal support was calculated at $2,050.06 minus child support.

d. Wife testified at the Master's Hearing that her pension contribution was not mandatory.

e. On August 20, 2020, Husband filed for an upward modification of support retroactive to November 19, 2019, "the date [Wife] knew her pension was nonmandatory." Husband's Brief at 24.

f. Without any calculations, the trial court modified Wife's monthly support obligation to $717.53, an increase of $96.25.

**See generally** Husband's Brief at 22-24. Husband claims the trial court erred by not calculating Wife's support obligation in accordance with Pa.R.C.P. 1910.16-4 or 23 Pa.C.S.A. § 4352(e). **Id.** at 24.

As Husband acknowledges in his brief, on March 21, 2021, the DR court granted Husband reconsideration of its support award, based on his claim of an incorrect net monthly income assigned to Wife. Husband's Brief at 11. The DR court explained in its April 18, 2022, order:

This case stems from [Husband] originally filing for spousal support on July 5, 2019. On October 23, 2019, a hearing was held at which [Wife] represented that her retirement contribution was mandatory. Approximately three weeks subsequent to the October 23, 2019, hearing, [Wife] learned from her employer that her retirement contribution was not, in fact, mandatory. On February 21, 2020, a hearing was held at which [Wife] failed to disclose information regarding the voluntariness of her retirement contribution. On August 19, 2020, another hearing was held at which [Wife] testified as to the voluntariness of her retirement contribution. On August 20, 2020, [Husband] filed for an upward modification partially based on [Wife's] testimony the previous day.

Trial Court Order, 4/18/22, at 3 (paragraph breaks and designations omitted).

The DR court determined Husband was entitled to a retroactive modification

of the support award. *Id.* at 7.

On April 16, 2021, Wife presented a motion to suspend spousal support

in the DR court. *See* DR Order, 5/13/21. Ultimately, the DR court entered

an order providing, in part, as follows:

> A review of the Master's Report and Recommendation concerning
> the equitable distribution and alimony issues at the parties'
> divorce proceeding at No. 10934 of 2018, C.A., recommends that
> no alimony be awarded to [Husband] because the assets awarded
> to him in the equitable distribution will be sufficient along with his
> income for his reasonable support.
>
> Because the distribution of marital assets to [Husband] … will be
> delayed pending final resolution of the equitable distribution
> divorce matters, **[Wife's] Motion to Suspend Spousal Support
> is DENIED. Adjustments can be made if necessary to
> equitable distribution to accommodate any excess paid to**
> [**Husband**] **in the Domestic Relation Action in the Divorce
> Action.**

DR Order, 2/3/21 (emphasis added, paragraph designations omitted).

The trial court's subsequent equitable distribution order made the

adjustments necessary to achieve economic justice between the parties,

including the discontinuation of spousal support and denial of alimony.[3] *See*

*id.*; *see also* Trial Court Opinion, 2/8/23, at 8-9 (in addressing the issue of

alimony, concluding that Husband's equitable distribution award meets the

---

[3] We address Husband's challenge to the denial of alimony *infra*.

reasonable needs of Husband). As the issue of support was addressed through the equitable distribution, no relief is warranted. *See id.*; *see also Horn*, 564 A.2d at 996.

**III. Whether the court erred in ruling as inadmissible hearsay evidence of a broker's listing, which indicated the price of the marital residence and twenty acres when [Wife] sought to list the property?**

Husband next argues that the master and trial court erred in disallowing evidence regarding a broker's listing, which included the price of the marital residence and twenty acres of property. Husband's Brief at 30. Husband claims the listing was relevant and admissible as impeachment evidence to attack Wife's credibility. *Id.* at 30-31.

Husband contends the hearing officer improperly sustained objections to (a) his cross-examination of Wife with a September 25, 2018, appraisal of the marital residence, and (b) questions regarding the West Penn Multi List contract signed by Wife. *Id.* at 31-32. Husband argues,

> [a]ll figures [are] substantially higher than the appraisal presented by [Wife]. The master's and the [c]ourt's upholding [Wife's] objections substantially prejudiced [Husband], by hampering [Husband's] ability to impeach. In relation to use of the documents to impeach, whether they are hearsay or not is not a proper consideration.

*Id.* at 33.

Regarding the valuation of marital property,

> [t]he Divorce Code does not specify a particular method of valuing assets. Thus, the trial court must exercise discretion and rely on the estimates, inventories, records of purchase prices, and

12

appraisals submitted by both parties. When determining the value of marital property, the court is free to accept all, part or none of the evidence as to the true and correct value of the property.

***Biese v. Biese***, 979 A.2d 892, 897 (Pa. Super. 2009) (citation and internal quotation marks omitted).

Husband challenges the trial court's determination that a non-testifying broker's listing price and broker Sondra Keith's out-of-court discussions with Wife are inadmissible hearsay.

[The a]dmission of evidence is within the sound discretion of the trial court and a trial court's rulings on the admission of evidence will not be overturned absent an abuse of discretion or misapplication of law. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.

***Schuenemann v. Dreemz, LLC***, 34 A.3d 94, 100-01 (Pa. Super. 2011) (quotations and citations omitted).

Hearsay is a statement, other than a statement made by the declarant while testifying under oath, which is offered for the truth of the matter asserted. Pa.R.E. 801(c). Generally, hearsay is inadmissible at trial. ***Id.***; Pa.R.E. 802.

A statement is hearsay only if it is offered to prove the truth of the matter asserted in the statement. There are many situations in which evidence of a statement is offered for a purpose other than to prove the truth of the matter asserted.

Pa.R.E. 801 cmt. "[W]here an out-of-court statement is not admitted for the purpose of proving the truth of what was said, the hearsay rule does not bar

admission of that statement." ***Am. Future Sys. v. Better Bus. Bureau***, 872 A.2d 1202, 1213 (Pa. Super. 2005).

As the trial court explained,

[t]he Master correctly ruled that the dollar amount of the appraisal by Sondra Keith is hearsay and not admissible. There is no question that Sondra Keith's appraisal amount is a determination made by Sondra Keith based on her own expertise and documentation. Since Sondra Keith was not called to testify, such evidence is clear hearsay as defined the Pennsylvania Rules of Evidence 803 *et seq.* and none of the [e]xceptions to the Hearsay Rule apply.

Trial Court Opinion, 2/8/23, at 11 (citation omitted). We agree. The listing price for the property, as well as thebroker's appraisal, are not admissible. The broker who listed the property did not testify at the hearing, and the listing price was offered for its truth as to the property's value. Pa.R.E. 801(c). We thus agree with the trial court's determination that such evidence was inadmissible hearsay. ***See id.*** Husband's issue merits no relief.

## IV. Whether the court abused its discretion in valuing the marital home?

Husband argues that the trial court abused its discretion valuing the marital residence and property. Husband's Brief at 35. Husband acknowledges, "[t]he Master found [Wife's] appraiser more credible than [Husband's] appraiser, without expanding on what factors caused the master to reach that determination." ***Id.***

Husband challenges the appraisal conducted by Wife's appraiser, Daniel

McCown, as "flawed and intentionally reduces the value." *Id.* at 37. Without

supporting citations to the law and record, Husband argues,

> As per a normal appraisal, the appraiser determines a value of land per acre in the area, then adjust[s] the price up or down as necessary. Looking at sale number two again, in order to make the land comparable the adjustment should have increased, using Mr. McCown's number of $3000 to $95,010. (3000 x. 31.6). This approach is universally used as it is completely logical, *i.e.* the price goes up because a purchaser of the subject property is getting more acreage.
>
> [Mr. McCown] further exasperates the reduction in value by arriving at a price per square foot that takes into consideration the land. Incidentally, price per square foot is used solely as a cost analysis, as in this price per square foot is what it would cost today to build a house with x square footage. However, Mr. McCown found his number by taking his adjusted price for land to [*sic*] 20 acres number and dividing it by the square footage of the house. In other words, he excluded the square footage of the land from the calculations, but included the land in the calculation of adjusted price. This method is mathematically incorrect, to properly arrive at a price per square footage, square footage of the entire property land and all must be calculated then divided by the sale price without adjustment. This of course is never done by anyone because the price per square foot deals solely with the house and the price to build it. By using this calculation[,] Mr. McCown twice used the barren land price to reduce the value of subject properties and ultimately the [] marital home and land.

*Id.* at 37.

Husband claims the appraisal conducted by his own appraiser, Leslie

Champ, was properly performed. *Id.* at 40. Husband cites to Ms. Champ's

adjustments in value, but fails to direct our attention to the place in the record

where they may be found. *See id.* More importantly, Husband acknowledges

that the master and the trial court found Wife's appraiser more credible than

his own. *Id.* at 41. Husband argues, "both believed [Mr. McCown] simply

because they had a bias in favor of [Wife] and Mr. McCown was her 'expert'

witness." *Id.* Husband does not support his claim of bias with citations to the

record.

In assessing the experts' respective credibility, the trial court explained:

Wife called Dan McCown,[4] a real estate appraiser, who after stating the basis for his appraisal, stated that the fair market value of the marital home and the 75.59 acres is $766,800.00. The Husband called Leslie Champ, a real estate appraiser, who testified as to her method of appraisal and her opinion that the value of the home and acreage was $810,000.00. The difference between the two appraisals is $43,200.00. Both appraisers investigated several comparable properties and made adjustments to those properties for factors that either justified an increase in the comparable (based on some factor that was more favorable in the comparable as opposed to the marital property) or decreased the value of the comparable (based on factors that made the comparable less valuable than the marital property).

The bulk of the $43,200 difference between the appraisals is a result of Dan McCown using $3,000 per acre for the raw acreage and Leslie Champ using a value of $3,663.00 per acre. With the $663.00 per acre difference, the dollar value differential per raw acreage times 75.59 acres is $50,116.17. Both appraisers divided the property into a house and twenty acres plus 55.59 raw acres. The raw acreage difference on 55.59 acres ($663.00 x 55.59 acres = $36,856.17). Leslie Champ noted that her appraisal of $810,000.00 was based on the assumption that the onsite sewage system was fully functional, despite the fact that she noted that there was an odor coming from the sewage system and that it would have to be professionally inspected to find out what the problem was and what costs, if any, would be incurred in bringing the system into compliance with sewage requirements. In light of the sewage issue, there will be at a minimum an inspection cost and there exists a possibility of extensive and expensive repairs

---

[4] We have corrected the spelling of Mr. McCown's name.

to the sewage system. The average value of Leslie Champ's adjusted comparables was $753,266.00.

Dan McCown's estimate included oil and gas rights (which are dealt with separately in this Order). In as much as the oil and gas rights have already been leased and as indicated later in this Opinion, are to be divided 50/50 between Husband and Wife, argument can be made that Dan McCown's estimate would decrease if he considered the fact that the oil and gas rights are not going 100% with the ultimate property owner, the Wife.

A review of both appraisals indicates that the Dan McCown appraisal is more complete than Lesley Champ's appraisal. This [c]ourt agrees with the Master's finding that the McCown appraisal is more credible than the Champ appraisal and the value of the home is set at $766,800.00.

Trial Court Opinion, 2/8/23, at 9-10 (citation omitted, footnote added). The trial court's findings are supported in the record.

The trial court, as finder of fact, was "free to believe all, part, or none of the evidence," and this Court will not disturb the trial court's credibility determinations. **Lee v. Lee**, 978 A.2d 380, 382 (Pa. Super. 2009). Mindful of the trial court's broad discretion in valuing assets for purposes of equitable distribution, and this Court's highly deferential standard of review, we discern no error in the trial court's credibility determinations. **See McCoy**, 88 A.2d at 908; **Carney**, 167 A.3d at 131. Husband's claim merits no relief.

**V. Whether the trial court erred by failing to place a value on the timber and divide the asset?**

Husband next claims the master erred in failing to separately list and value standing timber on the marital property. Husband's Brief at 42.

- 17 -

Husband asserts that he specifically testified that the timber's value is between $18,000 and $20,000. *Id.* Husband points out that Wife, too, separately valued the timber at $18,000. *Id.* According to Husband, the trial court's "reliance on both appraisers' testifying to the value of the property in fee simple is misplaced." *Id.*

Wife counters that the value of standing timber on the marital property "is included in the fee simple fair market value of the marital property." Wife's Brief at 27. Wife asserts that both the master and trial court "concluded that a separate value should not be determined" for the timber. *Id.* Further, the inclusion of the timber's value as part of the fair market value is consistent with both parties' expert appraisals. *Id.*

In addressing this issue, the trial court found that the timber's inclusion in the fair market value of the marital property was appropriate:

> The marital property has been logged three times between 2005 and 2016, with each logging bringing in reduced revenue. Both the Husband's property appraisal and the Wife's property appraisal appraised the property as is with the timber intact. Any separate award for the value of the standing timber on the property would therefore reduce the fair market value assessment of the real estate by an equal amount. Therefore, no separate award for the value of the standing timber on the marital property is being made.

Trial Court Opinion, 2/8/23, at 10-11. We agree with the trial court's sound reasoning and affirm on this basis regarding Husband's fifth issue. *See id.* This claim merits no relief.

**VI. Whether the court abused its discretion in failing to award him alimony?**

Finally, Husband challenges the trial court's failure to award him alimony. Husband's Brief at 43. Husband argues, "both the master and the court determined the net monthly income of [Wife] that was not supported by the record." *Id.* at 44. Husband claims that the master and the trial court failed to review Wife's 2019 tax return and 2019 W-2 in determining her income. *Id.* at 45. According to Husband, both the master and the trial court improperly relied on the domestic relations order, which was calculated without the benefit of Wife's 2019 tax return and W-2. *Id.* Husband further claims the trial court failed to consider that Wife's company provides her with a company car, a 150% match on her 401(k) contributions, and medical and dental insurance. *Id.*

Husband asserts the master and court ignored the fact that he worked as a farmer, has an annual gross income of $33,000, and a net income of $2,125.34 per month. *Id.* at 45-46. In addition, Wife is 49 years old and in good health, while Husband is 54 years old and has a prior history of skin cancer. *Id.* at 46. Husband states that the Master recommended he receive the $159,730.00 in equity from the marital residence. *Id.* at 50. However, the trial court changed this recommendation, awarding the equity in the marital residence to Wife. *Id.* Instead, Husband received $457,041.00 of Wife's IRA and 401(k), which, he complains, is only accessible through a Qualified Domestic Relations Order. *Id.* According to Husband, he will incur a mandatory 20% tax withholding if he attempts to access these funds. *Id.*

Husband argues the master and trial court improperly considered only his reasonable needs, without taking into consideration his standard of living obtained during the marriage. *Id.* at 51.

Our standard of review regarding questions pertaining to the award of alimony is whether the trial court abused its discretion.

> We previously have explained that "[t]he purpose of alimony is not to reward one party and to punish the other, but rather to ensure that the reasonable needs of the person who is unable to support himself or herself through appropriate employment, are met." Alimony "is based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay." **Moreover, [a]limony following a divorce is a secondary remedy and is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution award and development of an appropriate employable skill.**

*Teodorski v. Teodorski*, 857 A.2d 194, 200 (Pa. Super. 2004) (emphasis added; quotation marks and citation omitted).

The Pennsylvania Divorce Code provides the following regarding alimony:

> **(a) General rule.--**Where a divorce decree has been entered, the court may allow alimony, as it deems reasonable, to either party only if it finds that alimony is necessary.
>
> **(b) Factors relevant.--**In determining whether alimony is necessary and in determining the nature, amount, duration and manner of payment of alimony, the court shall consider all relevant factors, including:
>
> > **(1)** The relative earnings and earning capacities of the parties.
> >
> > **(2)** The ages and the physical, mental and emotional conditions of the parties.

**(3)** The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

**(4)** The expectancies and inheritances of the parties.

**(5)** The duration of the marriage.

**(6)** The contribution by one party to the education, training or increased earning power of the other party.

**(7)** The extent to which the earning power, expenses or financial obligations of a party will be affected by reason of serving as the custodian of a minor child.

**(8)** The standard of living of the parties established during the marriage.

**(9)** The relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment.

**(10)** The relative assets and liabilities of the parties.

**(11)** The property brought to the marriage by either party.

**(12)** The contribution of a spouse as homemaker.

**(13)** The relative needs of the parties.

**(14)** The marital misconduct of either of the parties during the marriage. The marital misconduct of either of the parties from the date of final separation shall not be considered by the court in its determinations relative to alimony, except that the court shall consider the abuse of one party by the other party. As used in this paragraph, "abuse" shall have the meaning given to it under section 6102 (relating to definitions).

**(15)** The Federal, State and local tax ramifications of the alimony award.

**(16)** Whether the party seeking alimony lacks sufficient property, including, but not limited to, property distributed

under Chapter 35 (relating to property rights), to provide for the party's reasonable needs.

**(17)** Whether the party seeking alimony is incapable of self-support through appropriate employment.

23 Pa.C.S.A. § 3701.

The master addressed each of these factors in the MRR. **See** MRR, 12/23/20, at 14-17. In its opinion, the trial court explained its decision not to award Husband alimony:

The Wife is employed with Genzyme Corporation making $9,801.42 per month, with retirement benefits, a company car, and medical and life insurance. [Husband] is employed by Humility of Mary with a net monthly income of $2,125.34, with retirement benefits and medical benefits. The Husband has an associate[s] degree in marketing and experience in the managerial field. However, during the marriage, the Husband decided to become a farmer and operated a marginally profitable farm on the 75-acre farm where they also lived. At some point, he stopped being a farmer and is employed by Humility of Mary as a farmer on their extensive landholdings and farm in Lawrence County, Pennsylvania.

This [c]ourt divided the marital property equally between the parties and both received marital assets exceeding $500,000.00 in value. With the Husband's gross income of approximately $35,000.00 per year and his ability to go back into retail or marketing, if he so chooses, and with the amount of marital assets that he received in the equitable distribution [o]rder, the Husband has adequate income and assets and is not in need of alimony. Alimony is a secondary remedy and is available only where the economic justice and the reasonable needs of the parties cannot be achieved by way of equitable distribution and development of an appropriate employable skill. 23 Pa.C.S.A. § 3701(a); **Nemoto v. Nemoto**, … 620 A.2d 1216 ([Pa. Super.] 1993). The purpose of alimony is to ensure the reasonable needs of a spouse who is unable to support himself through appropriate employment, **Miller v. Miller**, 744 A.2d 778 (Pa. Super. 1999). Based on the facts established in this case, the Husband is capable of employment either as a farmer or in marketing and retail, in

accordance with his education, to support himself. He also has available to him equitably divided marital assets sufficient to provide for his reasonable needs into the future. For these reasons, an award of alimony is not appropriate.

Trial Court Opinion, 2/8/23, at 8-9. The trial court's findings are supported in the record, and we discern no error or abuse of discretion in its denial of alimony. *See id.* Accordingly, Husband is not entitled to relief on this issue.

## WIFE'S CROSS APPEAL

Wife presents the following issues for review:

1. Whether the trial court erred in awarding Husband one-half of the revenues of the existing oil and gas lease and any extension or renewal of the Lease.

2. Whether the trial court erred in concluding that Wife shall be solely responsible for the debt for the parties' daughter's automobile.

3. Whether the trial court erred in failing to require Husband to pay 100% of the tax liability resulting from the partial distribution of Wife's qualified retirement account.

4. Alternatively, whether the trial court erred in characterizing the tax liability resulting from the distribution of Wife's qualified retirement account as a marital debt and requiring Wife to pay 50% of the tax liability resulting from the distribution of Wife's qualified retirement account in the context of a 50%-50% distribution, when Wife paid the entire tax obligation from her own non-marital funds.

Wife's Brief at 38-39.

**1. Whether the trial court erred in awarding Husband one-half of the revenues of the existing oil and gas lease and any extension or renewal of the lease.**

Wife first argues that the trial court improperly awarded Husband one-half of the revenues from the existing oil and gas lease and any extensions of

the lease. *Wife's Brief* at 44. As Wife acknowledges, the master equally divided the monthly gas revenues from the oil and gas lease. *Id.* Wife filed an exception to this recommendation, but the trial court dismissed her exception. *Id.* Wife argues that she should be entitled to all royalties. *Id.* at 45. According to Wife, "the parties resolved the ownership of the marital property by Husband conveying *all* his right, title and interest in and to the marital property to Wife." *Id.* (emphasis in original). Wife argues the right to royalties is an incident of ownership of the oil and gas rights, and a component of the fair market value of the marital property. *Id.*

Wife contends "[t]he basis of the [c]ourt's decision is contrary to the evidence." *Id.* She asserts, the intent of the parties' partial settlement agreement was to convey fee simple title of the marital premises to Wife, and award Wife the fair market value of the premises. *Id.* According to Wife, this includes the value incident to the oil and gas rights and the royalties derived therefrom. *Id.* Wife claims that the sharing of royalties reduces the value of the marital property and Wife's award. *Id.*

Our review discloses the parties' October 10, 2020, partial settlement agreement (PSA) provided, in relevant part, as follows:

4. The parties have agreed and [Husband] shall convey to [Wife], all of his right, title and interest in and to the marital residence and property, identified as Lawrence County Parcel Identification Number 24-103900, located at 433 Harbor Edinburg Road in Mahoning Township, Lawrence County, Pennsylvania ("Marital Premises"), in exchange for which [Wife] shall transfer to [Husband] all of her right, title and

- 24 -

interest in and to the parties' 2013 Georgetown XL 38'
Motorcoach recreational vehicle.

5. [Wife] shall assume sole responsibility for the payment of the
marital debt to First National Bank of Pennsylvania secured by
the marital premises.

6. The parties hereby waive, release, and quitclaim to the other,
any right, title or interest he or she may have in and to the
property conveyed to the other as set forth herein.

PSA, 10/10/20, ¶¶ 4-6.  The PSA did not require Husband to transfer his
interest in the royalties due under the oil and gas lease to Wife.

At the master's hearing, the parties presented expert testimony
regarding the value of the marital residence and property.  Ms. Champ,
Husband's expert appraiser, explained that in valuing the property, she
considered Wife's statement that the property was producing no income:

[I]n every … appraisal, there's three approaches to value.  And,
of course, the sales comparison is historically the most accurate
in older homes.  Okay.  And I know the home's fifteen years [old],
but it is older than seven.  Typically if you have a home that's
seven years or younger, you would apply the cost approach.  This
is where you would actually build the home new and then
depreciate it down, but … at that point, you know, how do you
accurately measure that accrued depreciation.  And then the other
approach would be the income approach, and that's where it
would be, say, if this was an income producing farm.  I asked the
woman when she was there and she said that this was not an
income producing farm.  **I asked [Wife], okay. So, there's no
income coming out of it or if it was a rental property, you
could go ahead and capitalize that rental income, but it's
not.** So, therefore, the income approach was not deemed
necessary. So, the sales comparison approach was utilized.

N.T., 10/6/20, at 8 (emphasis added). Thus, Ms. Champ did not consider the income derived from the oil and gas lease/royalties when valuing the marital property. *See id.*

Similarly, Wife's expert, Mr. McCown, described the property he appraised:

> First of all, the property … contains 75.59 acres. And there is a []
> two—story dwelling on the property containing 4,389 square feet
> above grade, and two significant, what I would call, outbuildings,
> metal clad outbuildings. One containing a small apartment with a
> bath and so forth. The buildings have limestone flooring, earth
> flooring. They're basically pole buildings, farm type outbuildings.
> No insulation, metal roofs. The total of those buildings, total
> square footage is 2,560 square feet. … I'm sorry, That's the one
> building. The other one is 1694 [feet]. The two of them would be
> the sum of those.

N.T., 10/8/20, at 129-30. Similarly, Mr. McCown did not use the income capitalization approach to value, as it is reserved to properties that generate income. *Id.* at 131. Mr. McCown did not consider the oil and gas lease and royalties in valuing the marital property. *See generally id.* at 129-31.

Keeping in mind that the Divorce Code requires that the courts do "economic justice," 23 Pa.C.S.A. § 3102(a)(6), we discern no error or abuse of the trial court's discretion in dividing the oil and gas royalties between Husband and Wife. As the trial court explained,

> [t]he oil and gas rights and the rights to transmit oil and gas
> across marital properties are a significant asset. The transmission
> rights were sold, according to [] Husband[,] for $250,000.00. The
> oil and gas rights to the property were leased for an initial
> payment of $2,850.00 an acre (which amounts to $215,431.50).
> And the parties continue to receive monthly payments which have
> varied substantially over time. **Both appraisals valued the**

**property without any consideration as to the value of the minerals or oil and gas on the property.** Clearly, with the amount of money already paid to the parties, the minerals and oil and gas have substantial value.

**Neither party has submitted any professional appraisal by which the [c]ourt can place a value on the oil and gas lease royalties' value.** Therefore, the only practical method of dividing this valuable marital asset is by dividing the future royalty payments 50/50 between the parties.

Trial Court Opinion, 2/8/23, at 2 (citation omitted, emphasis added). We discern no error or abuse of the trial court's discretion. Wife's claim merits no relief.

**2.    Whether the trial court erred in concluding that Wife shall be solely responsible for the debt for the parties' daughter's automobile.**

Wife challenges the trial court's determination that she is solely responsible for the debt resulting from the purchase an automobile for I. Wife's Brief at 46. Wife explains the parties purchased an automobile for their daughter's 16th birthday. *Id.* According to Wife, the car cost $28,000; they paid $14,000; and they borrowed $14,000. *Id.* Wife states that when their daughter totaled the vehicle in an accident, they were able to repay the car loan with a portion of the insurance proceeds. *Id.* at 46-47.

Wife asserts that Husband agreed that the vehicle should be replaced and participated in "looking for a car at a dealership[.]" *Id.* at 47. Wife acknowledges Husband agreed to contribute the remaining insurance proceeds toward purchase of a new car. *Id.* Wife asserts that she personally

incurred debt to pay for the new car, and claims this debt should be considered marital debt and split between the parties. *See id.* at 48.

Our review discloses that at the master's hearing, Wife testified regarding the vehicle's purchase:

So, we went about looking for a car for [their daughter]. [Husband] was threatening not to give her money to put towards it from the insurance check, which he finally ended up giving her the money from the insurance check. So we found her another car. **We utilized the insurance check to put towards the car, and then I had to finance an additional $15,000. Which I did on my own because I knew this was happening and I didn't want [Husband's] name on her car.** There was no reason for that at that point because we were just going to have to take it off. So I was paying her car payment anyway and her insurance. **I decided to just purchase the car on my own and do a loan on my own for the car.**

N.T., 8/19/20, at 60-61 (emphasis added).

In assigning this debt to Wife, the trial court explained,

[t]he parties were separated when a new car was purchased for their daughter as a replacement for the car that she [had] totaled. The Wife testified that the decision on what type of car and how much to spend was made solely by the Wife and the daughter, without the Husband's agreement. While the Husband traded in his vehicle on the purchase, the Wife made it clear in her testimony that the decision was hers and that she did not want the Husband's name on the car because she knew that she would be filing for divorce. The Husband is not named on the car loan. The car purchase and car loan were made and incurred **after separation**. The Master correctly did not impose any duty, obligation[,] or liability on the Husband for payment of this loan.

Trial Court Opinion, 2/8/23, at 2-3 (emphasis added, citation omitted). We agree with the trial court's analysis and is conclusion that the loan is not marital debt. *See id.* Wife's claim merits no relief.

**3. Whether the trial court erred in failing to require Husband to pay 100% of the tax liability resulting from the partial distribution of Wife's qualified retirement account.**

Wife argues the trial court improperly required her to pay a portion of the tax liability resulting from the partial distribution of her qualified retirement account to Husband. Wife's Brief at 48. Wife asserts,

> Husband should assume full responsibility for the $25,218.00 penalty and tax obligation resulting from his insistence that he receive the $73,500.00 distribution from the IRA direction, as opposed to it being transferred to a qualified account in his name….

*Id.* According to Wife, Husband "is at fault and responsible for triggering a penalty[,]" and for "dissipating a marital asset to the extent of the penalty and tax, which he could have avoided." *Id.* at 50. Wife claims the trial court should not have disturbed the master's recommendation that Husband be responsible for the penalty and taxes "for his conscious wasting of a marital asset[.]" *Id.*

The trial court addressed and rejected Wife's claim:

> After the parties separated, a Motion was filed to obtain exclusive possession of the marital home. A hearing was held on July 5, 2019. During a recess in the hearing, the parties reached an agreement which was placed on the record. The agreement that was placed on the record was as follows:
>
> a. The Wife was to have sole possession of the martial residence as of July 16, 2019.
>
> b. The Husband was to have possession of the 2013 Georgetown RV.
>
> c. "Third, [Wife] will transfer to [Husband] the sum of $73,500.00 from an AXA Traditional IRA that is in her

- 29 -

name only and will work on doing that immediately." At the time of the equitable distribution, the Wife would be credited with the $73,500.00 transfer in the equitable distribution hearing.

d. The Husband was to take his personal property from the house.

There was nothing mentioned by either party regarding the tax consequences.

**Both the Husband and the Wife testified that they expected the Husband to use the $73,500.00 that was to be transferred for living expenses.** The Wife testified at the equitable distribution hearing that she had been advised by a financial advisor to write a check for $73,500.00. By the agreement of both parties, the $73,500.00 was to come out of the IRA account and be given to the Husband. **Both parties expected the money to be used by the Husband for living expenses and not to be transferred into a tax-exempt IRA account in the Husband's name.** In as much as the AXA IRA was a marital asset and both parties agreed that the Wife would withdraw $73,500.00 from her IRA account and pay to the Husband "the sum of $73300.00" from the IRA account, both parties knew there would be a tax consequence. The parties stipulated that there was a penalty of $7,350.00 and a tax incurred by the Wife of $17,868.00 for a total of $25,218.00.

This was a decision made by both Husband and Wife with full knowledge that a tax liability would be incurred. Both should share the tax consequence of their joint decision.

Trial Court Opinion, 2/8/23, at 3-4 (emphasis added). The record supports the trial court's findings and conclusion. We discern no abuse of discretion by the court in apportioning the tax liability incurred because of the parties' joint decision. *See id.* Wife's issue merits no relief.

4. **Alternatively, whether the trial court erred in characterizing the tax liability from the distribution of Wife's qualified retirement account as a marital debt, and requiring Wife to pay 50% of the tax liability resulting from the distribution of Wife's qualified retirement**

- 30 -

**account in the context of a 50%-50% distribution, when Wife paid the entire tax obligation from her own non-marital funds.**

Finally, Wife argues the trial court erred in characterizing the debt as marital, because Wife paid Husband's share of the obligation from non-marital funds. Wife's Brief at 51. Wife claims "[t]he treatment of the debt as marital and the deduction of the entire amount from Wife's distribution as though it was paid from marital assets is error." *Id.* at 52. Wife claims the trial court improperly failed to recognize that she paid the taxes out of nonmarital funds. *Id.* Wife asserts that, to effectuate a 50-50 split, Husband should be required to pay her $12,609.00. *Id.*

Our review finds no support for Wife's claim. If, as Wife argues, the debt is nonmarital, it was incurred by Wife **after** separation. Thus, it would be attributable entirely to her, rather than split with Husband 50-50. As the trial court found, the parties agreed to the distribution of $73,500 from Wife's IRA, and the parties jointly agreed that the funds would not be transferred to a qualified retirement account. Under these circumstances, we discern no trial court error or abuse of discretion by its equal apportionment of the tax liability. *See* Trial Court Opinion, 2/8/23, at 3-4. No relief is due.

As we find no error or abuse of the trial court's decision regarding spousal support and the equitable distribution of marital property, we affirm the divorce decree.

Decree affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

2/13/2024